FILED

# UNITED STATES DISTRICT COURT
# IN THE EASTERN DISTRICT OF VIRGINIA
## ALEXANDRIA DIVISION
2021 DEC 23 P 2: 32
# ALBERT V. BRYAN U.S. COURTHOUSE
# 401 COURTHOUSE SQUARE
# ALEXANDRIA, VA 22314

IN RE:

MARLENE S. EARLEY
7381 PEMBROOKE CT
WARRENTON, VIRGINIA 20187

|  | USDC ALEX. VA Case No.: 21-CV-1437 |
|---|---|

Plaintiff(s)

v.

Jury Trial: (check one) ☐ Yes ☐ No

BANK OF AMERICA/CARRINGTON
MORTGAGE SERVICES LLC,
ERIE INSURANCE, IRS &
US DEPT OF HOUSING AND URBAN
DEVELOPMENT
&
Attorney For BofA/Carrington Mortgage:
LAW OFFICES OF
SHAPIRO & BROWN, LLC
10021 BALLS FORD RD
MANASSAS, VA 20109

DATE: December 22, 2021

Defendant(s) & Attorney

## PLAINTIFF'S COMPLAINT FOR A CIVIL CASE

I.    **The Parties To The Complaint**

A. The Plaintiff(s)

| Name: | Marlene S. Earley |
|---|---|
| Address: | 7381 Pembrooke Court |
| City and County: | Warrenton, Fauquier County |
| State and Zip Code: | Virginia, 20187 |
| Phone: | (571) 992-4556 |



1

**B. The Defendant(s)**

        **Defendant No. 1**

| | |
|---|---|
| Agency Name: | U.S. Department of Housing and Urban Development; |
| Title: | Office of the Secretary Et Al |
| Street Address: | 451 7th Street, Southwest |
| City and State: | Washington, District of Columbia |
| Zip Code: | 20410 |

        **Defendant No. 2**

| | |
|---|---|
| Agency Name: | Internal Revenue Service |
| | Office of the Commissioner Et Al |
| Address: | 1111 Constitution Avenue Northwest |
| City and State: | Washington, District of Columbia |
| Zip Code: | 20224 |

        **Defendant No. 3**

| | |
|---|---|
| Company Name : | Carrington Mortgage Services, LLC |
| Address: | P.O. Box 5001 |
| City and State: | Westfield, Indiana |
| Zip Code: | 46074 |

**Defendant No. 4**

| | |
|---|---|
| Company Name: | Erie Insurance Group |
| Address: | 100 Erie Insurance Place |
| City and State: | Erie, Pennsylvania |
| Zip Code: | 16530-1104 |

**Defendant No. 5**

| | |
|---|---|
| Company Name: | Bank of America Corporate Center |
| Title: | Office of the President |
| Address: | 100 North Tryon Street |
| City and State: | Charlotte, North Carolina |
| Zip Code: | 28255 |

## II.    Basis For Jurisdiction/Venue

This claim comes before this Court pursuant to Title 28 USC 85 §1331 to answer the Federal questions regarding the current home at the above listed address, which is also occupied by the Plaintiff. The Plaintiff is a long time resident of the Great State of Virginia. The Plaintiff's current home resides in Fauquier County and has resided in that home for approximately 11 years working as Registered Nurse for the bulk her life. When the Plaintiff closed on the home March 26, 2010 it was purchased using the HUD FHA 203K Loan program. The Foreclosure Trustee Sale of the Plaintiff's home is scheduled for December 30, 2021 at 11:00am in front of the Fauquier County Circuit Court Building.

The Plaintiff has repeatedly requested assistance from all parties listed above to address legitimate issues and grievances with the Plaintiff's home and received little to no help or help, which further damaged the Plaintiff's finances never curing the original issues. The questions and request for help by the Plaintiff asks The Court why:

1.) After repeated dispute requests with Carrington Mortgage Services, LLC and Bank of America has there been a consistent and repeated violations to the FHA Home Loan Program?

2.) Whether all parties violated Federal Regulations and codes involved regarding the Plaintiff home, insurance policy and taxes?

3.) Whether or not the Defendants engaged in a form of fraud or error'ed by taking improper steps to address the Plaintiff grievances?

4.) Whether HUD ignored the Plaintiff's repeated request to investigate the Fraud committed against the Plaintiff at time of purchase with regard to full disclosure of the currents residences condition and/or failed to get involved in correcting the behavior of the lender and servicer.

5.) Whether Erie Insurance's Breach of Contract constitutes an act of fraud while the home is enrolled in the FHA Loan Program along with violating state codes and consumer protections?

6.) Whether or not the Plaintiff was denied her rights under the 1st Amendment to Redress a Grievance against the Federal Government?

7.) Whether the Plaintiff was also denied the right to a proper investigation under the 4th Amendment to properly adjudicate her claims by HUD, Bank of America and Carrington Mortgage Services LLC?

4

8.) Whether the Internal Revenue Service Error'ed by garnishing Plaintiffs wages, charging excessive fees and penalties for previous tax years and/or exceeded their 10 year timeline to collect on a debt?

9.) Whether the Court can help the Plaintiff to correct/assist the Plaintiff in a positive resolution due to her age and health issues?

10.) Would a reasonable person find this to be fraudulent/deceptive business practices against a buyer/consumer and was considered waste fraud and abuse committed within HUD during the inspection of the Plaintiff's initial home purchase or repeated reporting?

**A.    If the Basis for Jurisdiction Is a Federal Question**

List the specific federal statutes, federal treaties, and/or provisions of the United States Constitution that are at issue in this case.

-The laws/statues in question by the Plaintiff against the U.S. Department of Housing and Urban Development Et Al are: Title 18 USC 47 §1001, 18 USC 63 §1341, HUD Handbook 4000.1 Sec II(A)(3), 400.1 Sec II(D), CARES ACT and in General Mortgage Fraud and Predatory Lending.

-The laws/statues in question by the Plaintiff against the Internal Revenue Service Et Al are: Title 28 USC 171 §2680, 15 USC 41 §1673 and 26 USC 66 §6502.

-The laws/statues in question by the Plaintiff against Carrington Mortgage Services, LLC Et Al are: HUD Handbook 4000.1 Sec('s) III (A)(2)(e)(i-iii); Sec.

II (8)(A)(vi); CARES ACT, 18 USC 47 §1001, 18 USC 47 §1002, 18 USC 63 §1341, 15 USC 41 §1692d(5), 15 USC 41 §1692e(8), 15 USC 41 §1692g(b), Fair Debt Collection Practices Act in General, Code of Virginia Title 18.2-213.2 Filing a false Lien or Encumbrance against Another.

-The laws/statues in question by the Plaintiff against Bank of America are: Fair Debt Collection and Practices Act Section('s) 805, 808, 809(b); 15 USC 41 §1692c, 15 USC 41 §1692f(1), 15 USC 41 1692g(b) and 12 USC 27 §2605(B)(1),

-The laws/statues in question by the Plaintiff against Erie Insurance are: 18 USC 63 §1341, 15 USC 93, Code of Virginia 38.2-508 Unfair Discrimination & Code of Virginia 38.2-510(4 & 5) Unfair Claim Settlement Practices and in General Breach of Contract.

## III.    Statement of Claim

TO THE HONORABLE UNITED STATES FEDERAL JUDGE:

I **Marlene S. Earley** do hereby make the following complaint pursuant to Fed. R. Civ. Proced. Rule 3 and Loc. Civ Rule 3(B)(1) & Rule 7, against the United States Department of Housing and Urban Development, Office of the Secretary Et Al, the Internal Revenue Service Office of the Commissioner Et Al, Carrington Mortgage Services, LLC Et Al, Bank of America Et Al and Erie Insurance Et Al.

<u>US Department of Housing and Urban Development Et Al:</u>

1.) The Plaintiff was shown 7381 Pembrooke Ct, Warrenton VA 20187 for potential purchase via the Remax Real Estate Agent within the Plaintiff's criteria in Dec 2009. (See Exhibit 26)

2.) Prior to the Plaintiff's Settlement/Closing in March 2010, the HUD FHA Appraiser annotated in the Appraisal inspection Report that there was water damage to the drywall and their was flooring deterioration on page 1 of 6 of the Uniform Residential Appraisal Report, under describe the condition of the property. Additionally on the Compliance Inspection Report no mention of water damage is mentioned and no mold inspection was ever conducted by the HUD FHA Appraiser and the Plaintiff was NOT given full disclosure of the extent of damage to the home the mold had taken. (See Exhibit 22)

3.) The Plaintiff hired a private Home Inspector who also annotated wood rot related prior water damage in his report but no current water leakage due to the appliances being off. The Home Inspector also included that there was water leakage from the water heater, which was in the past from the valve, which lead to damage to the floors but made no reference to mold or the Plaintiff should get a mold inspection. (See Exhibit 19)

4.) Plaintiff closed on 7381 Pembrooke Ct. Warrenton VA 20187 on March 26, 2010.

5.) Plaintiff began noticing issues with the home within the first year of living within the home.

6.) Plaintiff went on HUD's website in 2011/2012 to file a claim to find out what options the Plaintiff had.

7.) HUD approved a $30,000.00 claim through Bank of America and took off the arrearages and put onto the end of to Plaintiff's loan but that was not the Plaintiff's original request to address the mold the Plaintiff found in the home in January 2014.

8.) Plaintiff asked son for help on how to notify HUD of problems with Bank of America and Carrington Mortgage Services, LLC and Plaintiff's son Jason B. Braun contacted HUD on behalf of the Plaintiff in August 29, 2017 and HUD gave a case number of CAS-6626402-D35652 and emailed regulation resources but made no attempt to investigate or take a report.

9.) Plaintiff asked for son's help again to reach back out to HUD on her behalf again in May of 2018 and a new HUD Case was generated CAS-7060744-N1Z6X6. HUD email only regulations and failed to take a proper report or investigate.

10.) Plaintiff filed a Chapter 13 Bankruptcy with the Honorable Judge Brian F Kenney's Court on 10/5/2017, Case No. 17-13373-BFK. The case was dismissed on June 20, 2019 due to Plaintiff having difficulty with her attorney not appearing for court dates and not being able to cure the issues with her home in that Venue or having the knowledge base as he originally stated. Attorney quit on the Plaintiff and the case was dismissed. (See Exhibit 27)

11.) Plaintiff reached out herself to HUD January 29, 2021 and emailed her detailed letter to answers@hud.gov the many issues she was having with her home and with her Servicers Bank of America and Carrington Mortgage Services, LLC.
(See Exhibit 2)

12.) HUD issued her a case number of CAS-90704452-F5L2L3 ON January 29, 2021. (See Exhibit 2)

13.) HUD Closed the Plaintiff's case with investigation or further assistance February 4, 2021 via email. (See Exhibit 2)

14.) The Plaintiff again reached out to HUD herself via email to VA_weebmanager@hud.gov and received and email response on December 13, 2021 expressing her urgent need for help and the wrongful foreclosure sale of her home by Carrington Mortgage Services, LLC. HUD assigned the Plaintiff a case number FHA Case Number 541-9019362-702. Plaintiff received subsequent emails from HUD employee Hidaia Salem and also spoke via phone with Ms. Salem who stated she was limited on her knowledge base and didn't know anything legal and the Plaintiff was again referred back to the answers@hud.gov email. (See Exhibit 4)

15.) HUD has failed to assist the Plaintiff by any reasonable means as outline by Congress when reporting Mortgage fraud, predatory lending and banking behavior or violations to the Plaintiff FHA Loan by the servicer. The Plaintiff has consistently dealt with the agency ignoring her pleas for help and has allowed or fosters a negative and unhealthy environment for homeowners in distress and allowed abuse of the elderly to take place.

Erie Insurance Group

1.) Plaintiff purchased an Erie Insurance Home Protection Policy and wanted a Rider Policy for Dog Breeding, Showing and Grooming, Kennel and her piano in April 2010. (See Exhibit 17)

2.) Erie acknowledged Plaintiff breeds and raises her dogs but communicated back to the Plaintiff when they wrote the policy changing the Plaintiffs desired language with "Raises these dogs for show at West Minster" and put into the Rider policy Dog Grooming or Kennel in April 2010. (See Exhibit 17 & 14)

3.) During 1st year of the Plaintiff's ownership of her home, the Plaintiff noticed a shifting and cracking with the frame and walls to include mold.

4.) In 2011 the Plaintiff Contacted Erie Insurance Insurance and filed a lawful claim for damages per her Insurance Agents recommendation and policy, as it was new to the Plaintiff. (See Exhibit 15 & 16)

5.) Erie Insurance Sent out a claims adjuster to evaluate the extensiveness of the damage and the property adjuster was Richard Horvath. (See Exhibit 16 & 15)

6.) The Erie Insurance Adjuster issued a letter to the Plaintiff dated December 19, 2011 asking to discuss the above loss with the Plaintiff. (See Exhibit 15)

7.) Erie Insurance issued a letter January 3, 2012 denying the Plaintiff's claim expressing the mold and other issues were pre-existing. (See Exhibit 15 & 16)

8.) Plaintiff was forced to gut the hazardous mold infecting her downstairs bathroom, kitchen and hallway.

9.) Plaintiff relied on her son and a cousin that was staying with her to remove the hazardous mold and had to purchase full NIOSH Compliant hazmat gear so the noxious fumes wouldn't harm the Plaintiff's family members.

10.) Plaintiff filed a 2nd Claim with Erie Insurance November 7, 2012 over another issue she found of water seepage from the pipes and more mold through out the crawlspace, her HVAC and heating also went out and other issues. (See Exhibit 15 & 16)

11.) Erie Insurance sent out the same Insurance Adjuster again who conducted his inspection. (See Exhibit 15 & 16)

12.) Erie Insurance issued the Plaintiff another denial letter November 19, 2012 claiming it was pre-existing. (See Exhibit 15 & 16)

14.) Plaintiff maintained a Homeowners Policy and Rider policy with Erie Insurance until 2015. (See Exhibit 14)

15.) Erie Insurance again issued another letter to the Plaintiff dropping the Plaintiff from her policy on March 19, 2015 claiming the Plaintiff was engaging in a dog breeding operation. (See Exhibit 14)

16.) Plaintiff's Contract for Insurance with Erie Insurance included a Rider Policy   giving the Plaintiff Insurance Coverage for a Dog Breeding and Grooming Business.(See Exhibit 14 & 17)

17.) Plaintiff loss use of her kitchen, all bathrooms, hallway and entryway and other major plumbing and electrical along with leaving the Plaintiff living on unfinished sub-flooring.

18.) Plaintiff reached out multiple times via phone to address the discrepancies over the claims and being dropped from a lawful policy that should have addressed her claims.

19.) Erie Insurance refused to re-instate the Plaintiff's policy thereby entering into a breach of contract, engaging in fraud by unlawfully dropping the Plaintiff for a reason she had a Rider Policy for and knowing denying lawful claims regarding health and safety of the Plaintiff and her family that was staying with her. (See Exhibit 14)

<u>Bank of America</u>

1.) Plaintiff mortgage was transferred from Prospect Mortgage to Bank of America right after settlement/closing on her home in March of 2010.

2.) Plaintiff contacted Bank of America after 1 year of residency in March of 2011 to ask if she can drop the PMI Insurance from her loan due to new increased value from Land Surveyor Report. (See Exhibit 11)

3.) Plaintiff hired a Land Surveyor March 2011 to record property lines for dog fencing. (See Exhibit 11)

4.) Land Surveyor informed the Plaintiff local county records show only the land and a patio on her property. (See Exhibit 11)

5.) Land Surveyor filed with the county a correction to their records and included the house, porch, stoop, garage and patio, which increased the value of the Plaintiff's property in the amount of approximately $100,000.00 dollars. (See Exhibit 11)

6.) Plaintiff hired a structural engineer to evaluate the structure of her home after her cousin using a laser measurement system which showed the hallway flooring dropped by ½ inch or more. (See Exhibit 18)

7.) Plaintiff notified Bank of America telephonically approximately at the end of 2012 regarding the problems of mold, no heat and A/C and other issues with the home to refinance her home or pull out the equity and fix the damages.

8.) Bank of America denied the Plaintiff's request regarding health and safety issues that were brought to their attention unlawfully denied the Plaintiff the ability to cure and correct the damages.

9.) Plaintiff was lead to borrow money from Capitol One several time due to Bank of America's denial to address the mold problem that she knew about paying contractors for demoing, electricians, supplies and transportation of molded drywall, wood and other trash. Capitol One took Plaintiff to court for a warrant in debt but the Plaintiff paid off before the court date and case was dismissed. Capitol One incorrectly reported to credit bureau's a charge off which prevented the Plaintiff from receiving additional loan or support to fix her home.

10.) Plaintiff contacted Bank of America again to file a claim asking for assistance to fix up her home and Bank of America granted an FHA HAMP loan August 4, 2015 claim number FHA Case Number 541-9019362702 asking her to return documents by September 3, 2021.

11.) Plaintiff returned all documents multiple times due to "ERRORS AND OMMISSIONS" as stated by Bank of America.

12.) Bank of America sent the Plaintiff notification September 17, 2015 identifying errors and telling the Plaintiff to return the corrected errors by October 2, 2015.

13.) Plaintiff kept going back and forth with Bank of America to correct the paperwork and Bank of America did not issue a loan to fix the home but instead took $30,000.00 under a partial claim and moved it to the end of the Plaintiff loan which has to be paid back if she sells the home.

14.) Bank of America Transfers service of the Plaintiff's loan and fails to communicate the transfer BEFORE the transfer took place and notified the Plaintiff October 3, 2016 via mail that the transfer took place on September 15, 2016 AFTER it happened.

15.) Bank of America and Select Portfolio Servicing forcibly took Plaintiff's retirement home by committing unlawful B&E through a third party, and failed to inform the plaintiff of her legal rights along with failing to notify the Plaintiff of her court date in Johnston County NC. (See Exhibit 28 & 29)

16.) The Plaintiff filed two police reports with the Johnston County Sheriffs office regarding her Benson NC retirement home and the Court in that District threw out the initial foreclosure for improper conduct to North Carolina regulations against Bank of America. (See Exhibit 28 & 29)

17.) Plaintiff could not show for the second court case due to working and trying to take care of her primary home in Warrenton VA and ultimately lost her retirement home due to Virginia needing constant attention. (See Exhibit 28 & 29)

## Carrington Mortgage Services, LLC

1.) Plaintiff's Loan was transferred for servicing from Bank of America to Carrington Mortgage Services, LLC on September 16, 2016 and Bank of America still held the note/loan.

2.) Prior to the transfer from BofA to Carrington the Plaintiff's Escrow Account payment was going to be $1,808.29 for the loan amount.

3.) Carrington starts servicing/billing the Plaintiff's loan in October 2016 via a mail notification stating the Plaintiff is to send all payments to them on 9/22/2016. Carrington also sent legal notices to the Plaintiff referencing the Servicemembers Civil Relief Act in English and send the legal notice in Spanish to the Plaintiff on 9/23/2016.

4.) Carrington sent mail correspondence to the Plaintiff on 9/28/2016 offering several loss mitigation options to the Plaintiff without the Plaintiff's knowledge that the transfer had already taken place and the Plaintiff's loan was current before the loan was transferred to Carrington.  Plaintiff questioned why she was receiving loss mitigation if she was current.

5.) Carrington sent their 1st bill to the Plaintiff date 9/23/2016 before the Plaintiff has knowledge of the transfer from Bank of America. The amount the Plaintiff is asked to pay is $1,908.29, which was in conflict with her new payment with her Escrow of $1,808.29 and not explanation was provided for this conflict to the Plaintiff.

6.) Carrington continued to bill the Plaintiff at the incorrect amount of $1,908.29 through until January 2017. Carrington never refunded the extra $100.00 per month back to the Plaintiff nor did they apply it to her principle balance because it was not apart of her legal payment amount of $1,808.29.

7.) January 26, 2017 statement, sent a notice to the Plaintiff of an intent to foreclose on her home and that the Plaintiff continued to receive similar notices of intent to foreclose until Plaintiff filed Chapter 13 bankruptcy and restarted after it was dismissed until present.

8.) Plaintiff made consistent phone communication with Carrington during the 2017 year to inform them of her being on workers compensation, limited income and her status regularly.

9.) Plaintiff was released from disability and paid two arrear payments for May and June 2017 to Carrington. (See Exhibit 30 & 31)

10.) Approximately two weeks later the Plaintiff reached out to Carrington via telephone on August 11, 2017 to pay July 2017's payment.

11.) Carrington refused to accept the payment from the Plaintiff thereby violating FHA Loan guidelines and advised the Plaintiff she was 90 days behind and also mailed the Plaintiff her May and June 2017 payments back to her. (See Exhibit 30 &31)

12.) On August 12, 2017 the Plaintiff received from Carrington mail correspondence with the actual returned electronic checks from Bank of America for the May and June 2017 payment.

13.) Carrington cited to the Plaintiff the total amount due was required and the payment must be in certified funds. Again violating HUD FHA guidelines regarding payment and that no payment full, partial or other can be refused from a customer on a government back loan. This came from HUD Resource Center Directly to the Plaintiff.

14.) Plaintiff sought legal counsel on 8/30/2017 who advised the Plaintiff to file bankruptcy Chapter 13 to save the home, due to Carrington's continued and malicious threats to the Plaintiff of foreclose. It was later revealed that Counsel was not showing up for court and misadvised the Plaintiff and the case was later dismissed.

15.) Plaintiff resumed payments after case dismissal to Carrington starting May 6, 2019. The Plaintiff made two payments for April and May 2019. Prior to this all payments were being made through Trustee and Garnishment.

16.) On 6/29/2019 the Plaintiff's 2004 Freightliner Sprinter Van had major mechanical problems with the transmission and the Plaintiff's other vehicle, a 1999 Volvo S70 in an accident earlier that with a deer which totaled out her car.

17.) The Plaintiff was dependent on her son for transportation to and from the hospital (her job) and while she was on emergency call and without any means of other transportation during June 2019.

18.) Due to the Plaintiff's work at the Hospital, she was required to be at work within 30 minutes from receiving an emergency call. The Plaintiff was forced to purchase another vehicle due to the Plaintiff's dismissal from bankruptcy and Carrington's actions the Plaintiff's credit would not allow her to purchase a used vehicle only a new one. The Plaintiff purchased a 2020 Kia Soul at 16.9% interest with a payment of $459.00 per month.

19.) Plaintiff was required to put a down payment of $1,000.00 dollars for the vehicle, which made her miss the June 2019 payment to Carrington.

20.) Plaintiff's job at the hospital in July 2019 requested its employees to take forced time off with only "call pay" at $14.00/hr and kept lessing the Plaintiff's hours which affected her ability to make her Mortgage payment and prevented her from seeking other gainful employment because she was on-call.

21.) Plaintiff received a legal letter "notice to occupant of acquisition" dated on July 3, 2019 from the Law Offices of Shapiro & Brown LLC.

22.) Plaintiff requested assistance from Carrington in August of 2019 to make them aware of the Plaintiff's work issues and transportation problems along with requesting a HAMP loan. Plaintiff signed the HAMP Trial payment program August 12, 2019. The Plaintiff was granted the FHA/HAMP trial payment program to begin on September, October and November of 2019 in the amount of $1,776.20.

23.) Plaintiff made her September payment online through her BofA account on 8/23/2019 (Carrington Confirmation# 13397304), her October payment was made online through her BofA account on 9/20/2019 (Carrington Confirmation# 13600793) and her November payment was made online through Carrington's portal on 11/1/2019 (Carrington Confirmation# 13895746) and Carrington forced the Plaintiff to pay more than the HAMP agreement stated in the amount of $1,808.09. Carrington thereby violated the HAMP agreement.

24.) In December 2019 the Plaintiff was confused about what her actual payment was whether it was $1,776.20 as the agreement had stated or $1,808.09. Plaintiff called Carrington in December 2019 and was told by a representative to not pay anything until a packet with payment arrangement will be mailed to the Plaintiff.

25.) Plaintiff did not receive Carrington's packet until the last day of the second week in December of 2019.

26.) Plaintiff was out of work from the end of November to a few days in December of 2019. When the Plaintiff returned back to work the Plaintiff accepted any and all shifts to get caught up for the time she was out. The Plaintiff did not get to read the Carrington packet until December 24, 2019 due to working so much. Carrington issued the Plaintiff a packet with a short time to review, sign and return by December 23, 2019.

27.) Plaintiff submitted the HAMP Packet via fax on December 24, 2019 and called Carrington

on the receiving a representative who advised the Plaintiff that there was no one there and to

call back after the holidays.

28.) Plaintiff called Carrington again on December 27, 2019 and was advised by a female

representative that her HAMP packet was no longer valid and she would have to apply for a

new HAMP agreement.

29.) The Plaintiff called Carrington again on December 30, 2019 and was advised by a male

employee to commit fraud by hand writing date changes on the last page of the packet and

fax it back to Carrington. No payment was made in December due to Carrington's behavior.

30.) Plaintiff was requested by Carrington to resubmit the original HAMP Application and

provide a personal statement regarding recent additional health conditions she was dealing with

and signed the new application January 3, 2020.

31.) Covid had started affecting the country and the Plaintiff hospital along with her work

schedule being reduce and sent home in January 2020.

32.) Carrington had not yet contacted the Plaintiff until February 4, 2020 with an approval of a

partial claim for another HAMP Trial Payment period. Payment start dates began on March 1,

2020, April 1, 2020 and May 1, 2020 all in the amount of $1,744.84.

33.) Plaintiff received abnormal medical inform regarding her health and has been under medical

care from February 2020 until present. Plaintiff's last day of employment was March 17, 2020

due to Covid-19 and her health condition was forced to retire early and never offered other assignments or retraining at her job.

34.) The Plaintiff filed paperwork with Carrington under the CARES ACT requesting her first 180 day deferment on April 24, 2020 and additional correspondence on June 12, 2020; September 11, 2020 and September 29, 2020 all referencing CARES ACT requests that Carrington kept reducing the time requested by the Plaintiff from 180 days down to 90. The Plaintiff also sent Carrington a copy of the CARES ACT LAW only to be met with Carrington not following the law. (See Exhibits 8 & 9)

35.) Carrington responded to the CARES ACT multiple times reducing the requested time and also foreclosure threats along with violating the CARES ACT and charging the Plaintiff interest, penalties, erroneous fees (Home Inspection Fees) and other charges.

36.) Carrington continued to violate the CARES ACT by fraudulently reporting to the credit bureaus that the Plaintiff failed to make her payments instead of reporting the loan in deferment/a freeze status along with continuing to charge the Plaintiff interest, penalties and erroneous fees thereby violating the CARES ACT again. (See Exhibits 8 & 9)

37.) The Plaintiff's CARES ACT request have covered her until July/August 31, 2021.

38.) The Plaintiff mailed correspondence to Carrington with a Certificate of Mailing and Certified Mail with returned receipt March 25, 2021 and addressed again the CARES ACT and Carrington violating it. This made the Plaintiff's 5th letter to Carrington over their behavior and the current President of the United States', Executive Order granting Extensions to homeowners affected by Covid-19 like the Plaintiff has. (See Exhibit 23)

19

39.) Plaintiff hired Real Estate Agent Patti Brown with Century 21 to sell 7381 Pembrooke Court
Warrenton VA 20187.

40.) The Plaintiff received multiple offers and in November/December 2021 the Plaintiff had an
offer for $420,000.00 and was presented with a contract to purchase and when a preliminary
title search was completed by the buyer. The search revealed the Plaintiff owing more than
she borrowed along with liens from the IRS for with egregious interest and penalties. (See
Exhibit 10)

41.) Plaintiff requested from Carrington Mortgage a Letter of Payoff. (See Exhibit #21)

42.) The Plaintiff reached out to Carrington to inform them of her intent to sell the home and
cure all debts and then Carrington presented the Plaintiff via the Law Offices of Gerald Shapiro
notice of intent to a Trustee Sale of her home on December 30, 2021 at 11:00am in front of the
Fauquier County Circuit Court. The Plaintiff Contacted the Circuit Court for a formal case and
there is no case of record. (See Exhibit #1)

43.) Plaintiff has exhaust all reasonable remedies and due to her income and health only bringing
in Social Security has been unsuccessful in securing representation through legal aid or any
attorney in her area.

44.) Plaintiff is requesting the Courts assistance for appointment of an Attorney to her case.

45.) Plaintiff received notification in the mail from ISN of a transferring in the Plaintiff's Loan
serving dated October 4, 2021 and a Letter from Novad Management Consulting advising the
Plaintiff of a Servicing transfer dated September 28, 2021. This has also created additional
confusion for the Plaintiff. (See Exhibit 20)

46.) A report to social services was made by the Plaintiff on December 15, 2021 and Fauquier
County Social Services conducted an inspection of the Plaintiffs home and living conditions on

December 17, 2021. Social Services have formally opened an investigation for Elder Abuse by

the Banks and HUD. Brittany Antezana is a Family Services Worker I/Adult Protective Services.

47.) Plaintiff has also reach out to her Congressman's Office to report these issues and filed a

report with the FBI for Mortgage/Criminal Fraud and Predatory Lending.


## Internal Revenue Service Et Al:

1.) The IRS has placed two liens on the Plaintiff's home in the amount of $69,167 placed on
10/2/2014 and the second lien is $14,905.00 on 7/6/2017. The 14k represents tax year 2013
and the 69k represents 2010 & 2011. The Plaintiff believes this to be inaccurate and
egregious charging by the IRS. (See Exhibits 24 & 25)

2.) The Plaintiff hired the Community Tax Law Project out of Richmond Virginia to assist her
with back tax issues and is working with Terri Morris from that organization to try and
remove the liens off the house so the Plaintiff can sell it. (See Exhibits 3, 5 & 6)

3.) The IRS wrongfully garnished the Plaintiff's Social Security wages for December 2021 after
accepting the agreement from the Community Tax Law Project on December 3, 2021. (See
Exhibit 13)

4.) The Plaintiff also believes the IRS is trying to collect on debts that fall outside of the 10 year
recovery period and that the actions of the IRS are extremely aggressive with the
garnishments and levies to the Plaintiff's wages and annual taxes.

5.) The Plaintiff believes the IRS's interest and penalties exceed what she actually owes for the
unpaid years.

## IV.    Relief Sought

The Plaintiff respectfully is requesting from the Honorable Federal District Judge and the Court
the relief sought below:

1.) Plaintiff is requesting that Erie Insurance be found at fault for breach of contract and fix
the loss of use and any damages to the home as a result and/or restitution to the Plaintiff.

2.) Plaintiff is requesting that Bank of America and Carrington correct the damage to her
credit and restore her credit to what is was before purchasing the home.

3.) Plaintiff is requesting Carrington Mortgage and Bank of America buy her out of her
home and allows the Plaintiff to keep her equity so she can purchase a new home OR
Bank of America and Carrington Mortgage fix all the deficiencies with the home and
offer the Plaintiff a reverse mortgage and allow the Plaintiff to stay in the home until the
Plaintiff is no longer living or sales the home.

4.) Plaintiff is also requesting from the Court to correct the overbilling by Carrington and
remove the liens on her property so the Plaintiff can sell the home and purchase another.

5.) Plaintiff is requesting that the Court review the Plaintiff's IRS debt and correct the
egregious fees and penalties.

6.) Plaintiff is requesting HUD to work with the Plaintiff to get her into a "NEW" home (i.e.
Clayton?) she can afford that allows the Plaintiff to have her dogs and payment that is no
more than a $500.00 payment

7.) Plaintiff is respectfully requesting monetary damages for having to living in an unsafe
home, which compromised her health and safety since March of 2010. The Plaintiff
defers to the Court and its Honorable Federal Judge to set a fair and just financial
judgment.

8.) Plaintiff requests that IRS return the December 2021 garnishment that was taken in error by the Agency.

9.) Plaintiff is also requesting that all parties be formally reprimanded for their negligent treatment of the Plaintiff.

## V. Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### 1. For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

**Date of signing:** December 22, 2021

**Signature of Plaintiff:** _Marlene S. Earley_

**Printed Name of Plaintiff:** MARLENE S. EARLEY



23

FILED

**UNITED STATES DISTRICT COURT**
**IN THE EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**
**ALBERT V. BRYAN U.S. COURTHOUSE**
**401 COURTHOUSE SQUARE**
**ALEXANDRIA, VA 22314**

2021 DEC 23  P 2: 33

IN RE:

MARLENE SUZANNE EARLEY
7381 PEMBROOKE CT
WARRENTON, VIRGINIA 20187          USDC ALEX. VA Case No.: 1:21-CV-1437

    Plaintiff(s)

    v.

BANK OF AMERICA/CARRINGTON
MORTGAGE SERVICES LLC,
ERIE INSURANCE, IRS &
US DEPT OF HOUSING AND URBAN
DEVELOPMENT
        &
Attorney For BofA & Carrington Mortgage:
LAW OFFICES OF
SHAPIRO & BROWN, LLC          DATE: December 22, 2021
10021 BALLS FORD RD
MANASSAS, VA 20109

    Defendant(s) & Attorney

---

# LOCAL RULE 83.1(M) CERTIFICATION

I declare under penalty of perjury that:

**My son has prepared, or assisted in the preparation of:** Civil Cover Sheet, JS-44 Addendum, Summons, Plaintiff's Emergency Motion To Stay Of The Sale Of Her Home Until The Grievances Can Be Heard & Request A Stay Of Any Further Garnishments By The Internal Revenue Service, Affidavit of Service, Plaintiff's Complaint for a Civil Case, Plaintiff's Motion Asking The Court To Turn In Additional Exhibits At A Later Date and Exhibits 1-32

Jason B Braun

1


ORIGINAL

(Name of Preparer)
7381 Pembrooke Court Warrenton VA 20187
(Address of Preparer)
(818) 317-0729
(Telephone Number of Preparer)
Prepared, or assisted in the preparation of, this document

MARLENE S. EARLEY

Marlene Suzanne Earley
(Name of Pro Se Party (Print or Type)

Marlene S. Earley

Signature of Pro Se Party

Executed on: December 21, 2021 (Date)

ORIGINAL

2