IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| MARLENE S. EARLEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:21-cv-1437 (RDA/TCB) |
| | ) | |
| U.S. DEPARTMENT OF HOUSING | ) | |
| AND URBAN DEVELOPMENT, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

This matter comes before this Court on Defendant Bank of America Corporate Center and Carrington Mortgage Service, LLC's ("Private Defendants") Motion to Dismiss (Dkt. 25); Defendant Erie Insurance Group's ("Erie") Motion to Dismiss (Dkt. Nos. 33; 38); Erie's Motion for Relief from Misjoinder (Dkt. Nos. 33; 40); Defendants Internal Revenue Service and the U.S. Department of Housing and Urban Development's Motion to Dismiss (Dkt. 60); and Plaintiff's Motion Objecting to this Court's Order Adopting the Magistrate Judge's Report and Recommendation (Dkt. 42). This Court has dispensed with oral argument as it would not aid in the decisional process. Fed. R. Civ. P. 78(b); Local Civil Rule 7(J). This matter has been fully briefed and is now ripe for disposition. Considering Private Defendants' brief in support of dismissal and its reply (Dkt. Nos. 26; 64); Erie's brief in support of its motions (Dkt. Nos. 34; 39; 41); Federal Defendants' brief in support of dismissal and its reply (Dkt. Nos. 61; 80); and Plaintiff's opposition briefs (Dkt. Nos. 53; 77); this Court GRANTS each of the Defendants' motions (Dkt. Nos. 25; 33; 38; 40; 60) and DENIES Plaintiff's motion (Dkt. 42) as MOOT for the reasons that follow.

## I.  BACKGROUND

### A.  Factual Background[1]

This matter arises from the Amended Complaint Plaintiff filed before this Court alleging a litany of violations against both federal and private defendants related to Plaintiff's initial home purchase, home maintenance, and foreclosure proceedings.  Dkt. 9 at 5-6.

*Federal Defendants*

Plaintiff alleges that she purchased her home in Warrenton, Virginia on March 26, 2010 after she obtained a U.S. Department of Housing and Urban Development ("HUD") FHA 203K Loan.  Prior to her settlement, however, Plaintiff alleges that the HUD FHA Appraiser identified water damage to the drywall as well as flooring deterioration but did not conduct a mold inspection. *Id.* at 7 ¶ 2.  During this pre-close period, Plaintiff also allegedly hired a private home inspector who identified wood rot from prior water damage. *Id.* ¶ 3.  Despite these inspection notes, Plaintiff elected to close on the house.  Within the first year of living within the home, Plaintiff began noticing issues with her home and sought to address these problems by filing a claim with HUD. According to the Amended Complaint, HUD approved a $30,000 claim but did not address Plaintiff's discovery of mold in January of 2014.  *Id.* ¶ 7.  With her son's assistance, Plaintiff contacted HUD with respect to additional problems she was having with Private Defendants who were, at different points in time, the servicers of her mortgage.  On October 5, 2017, Plaintiff filed for Chapter 13 bankruptcy, but the case was dismissed in June of 2019 because her attorney allegedly "quit on [her]."  *Id.* at 8 ¶ 10.  Plaintiff again allegedly contacted HUD in January of 2021 and received a new case number with respect to "the many issues she was having with her

---

[1] For purposes of considering the Motions, the Court accepts all facts contained within the Amended Complaint as true, as it must at the motion-to-dismiss stage. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

home and with her [s]ervicers." *Id.* ¶ 11.  HUD allegedly closed the case on February 4, 2021.  *Id.* ¶ 12.  Plaintiff again allegedly sought assistance from HUD in connection with the impending foreclosure of her home but found the customer service unhelpful.[2]

Plaintiff also brings claims against the Internal Revenue Service ("IRS") for interest and penalties exceeding what is owed and attempting to collect on debts outside the 10-year recovery period.  *Id.* at 21 ¶¶ 4-5.  On October 2, 2014, the IRS allegedly placed a $69,167 lien on Plaintiff's home and a second lien of $14,905 on July 6, 2017.  *Id.* ¶ 1.  Despite Plaintiff's efforts to contest and remove the liens, her home remained encumbered and the IRS allegedly wrongfully garnished Plaintiff's social security wages for December of 2021.  *Id.* ¶ 3.

*Private Defendants*

Immediately after closing, Plaintiff's mortgage transferred from Prospect Mortgage to Bank of America ("BofA") in March of 2010.  *Id.* at 11 ¶ 1.  In late 2012, Plaintiff allegedly notified BofA regarding issues in the house including, *inter alia*, mold and air conditioning problems and sought to refinance her home to fix these problems.  *Id.* at 12 ¶ 7.  But BofA allegedly denied Plaintiff's request and Plaintiff instead borrowed from another bank.  When Plaintiff again contacted BofA for financial assistance to fix her home, BofA allegedly granted her a loan under the Federal Housing Administration's ("FHA") Home Affordable Modification Program ("HAMP") on August 4, 2015.  *Id.* ¶ 10.  After trading correspondence on multiple occasions due to "errors and omissions" identified by BofA in the documentation requested of Plaintiff, BofA allegedly elected not to issue a loan but rather deferred $30,000 of the current principal of the loan to be paid back upon the sale of Plaintiff's home as a reverse mortgage.  *Id.* at 13 ¶¶ 11-13.

---

[2] Private Defendants have indicated that Plaintiff's foreclosure sale has since been continued to a date uncertain after having been initially scheduled for December 30, 2021.  *See* Dkt. 22 at 2.

3

Plaintiff further alleges that BofA transferred her loan to another service provider on September 15, 2016 and notified Plaintiff after the fact on October 3, 2016 over email. *Id.* ¶ 14. As evidence of BofA's alleged improper conduct as to her home in Warrenton, Plaintiff also describes a number of incidents surrounding BofA's handling of her "retirement home" in Benson, North Carolina, including the fact that a court in Johnston County, North Carolina "threw out the initial foreclosure [of her retirement home] for improper conduct" by BofA. *Id.* ¶¶ 15-16. She further alleges that she was unable to defend against the foreclosure of her retirement home in North Carolina due to her professional obligations as a nurse and caring for her primary home in Warrenton. *Id.* ¶ 17.

On September 16, 2016, BofA allegedly transferred the servicing of Plaintiff's loan for her Warrenton property to Carrington Mortgage Services, LLC ("CMS") while retaining the loan itself. *Id.* at 14 ¶ 1. CMS allegedly requested that Plaintiff send it all payments going forward. *Id.* ¶ 3. When Plaintiff received her first bill from CMS, the amount allegedly exceeded the amount held in Plaintiff's escrow account by $100.00. Plaintiff alleges that CMS continued to bill this amount through January of 2017 and never refunded the excess payment. *Id.* ¶¶ 5-6. On August 11, 2017, Plaintiff alleges she attempted to pay her monthly mortgage payment from July of 2017 over the phone but CMS declined the payment because she was "90 days behind." *Id.* ¶ 11. CMS also allegedly returned Plaintiff's checks for the months of May and June of 2017. *Id.* ¶¶ 11-12.

After having circumvented the foreclosure of her home by filing for Chapter 13 bankruptcy, Plaintiff alleges that after the dismissal of her bankruptcy case, she resumed making payments to CMS on May 6, 2019. *Id.* at 16 ¶ 15. Following a series of alleged financial setbacks, including limited work hours in July of 2019, Plaintiff struggled to make her mortgage payment. *Id.* ¶ 20. As a result, she requested a HAMP loan through CMS in August of 2019 and a trial

payment program began in the fall of that year at a reduced monthly payment amount compared to her current mortgage. *Id.* at 17 ¶ 22. But CMS allegedly forced Plaintiff to pay more than the HAMP amount. *Id.* ¶ 23. A CMS representative allegedly directed Plaintiff not to pay anything until she had received and submitted payment documents arranged in a "HAMP packet." *Id.* at 17-18 ¶¶ 24-28. Due to a hectic work schedule, her health, and the holidays, Plaintiff was unable to complete the packet in time to keep her HAMP loan valid. Upon request from CMS, Plaintiff allegedly resubmitted her HAMP application on January 3, 2020. *Id.* ¶ 30. On February 4, 2020, CMS approved Plaintiff's partial claim for another HAMP trial payment reduction to begin on March 1, 2020. *Id.* ¶ 32. But that month, Plaintiff's health declined significantly and her employer ended her contract in March of 2020.

As a result, Plaintiff filed for a 180-day deferment on the payment of her mortgage under the CARES Act, which Congress enacted in response to the COVID-19 pandemic. It appears from the face of the Amended Complaint that CMS allegedly instigated a host of actions against Plaintiff, including making foreclosure threats and charging excessive interest, penalties, and other miscellaneous fees. *Id.* ¶¶ 34-35. Plaintiff alleges that during this period she was protected under the CARES Act from paying her monthly mortgage until August 31, 2021. *Id.* at 19 ¶ 37. In November and December of 2021, Plaintiff listed her home for sale and received an offer. *Id.* ¶ 40. Because Plaintiff owed more than she had borrowed coupled with the IRS liens on the property, Plaintiff informed CMS of her intent to clear her debts by selling the home. *Id.* ¶ 42. In response, CMS scheduled a foreclosure sale for December 30, 2021 after the Law Offices of Gerald Shapiro served a notice of intent to conduct a trustee sale on Plaintiff's property. *Id.*

*Erie*

In conjunction with her purchase of the Warrenton property, Plaintiff enrolled in a property insurance policy with Erie Insurance ("Erie"). *Id.* at 9 ¶ 1. As part of that policy, Plaintiff alleges Erie included a rider policy covering her "Dog Breeding, Showing and Grooming, Kennel and her piano." *Id.* ¶¶ 1-2. In 2011, Plaintiff contacted Erie to file a claim for damages related to "shifting and cracking with[in] the frame and walls" and mold. *Id.* ¶¶ 3-4. After a claim adjuster examined the premises, Erie allegedly denied coverage because the issues were "pre-existing." *Id.* at 10 ¶¶ 6-7. On November 7, 2012, Plaintiff filed a second claim with Erie related to pipe leaks, mold, and a faulty HVAC system. *Id.* ¶ 10. Following another visit from an Erie claim adjuster, Erie issued a second denial of coverage letter on November 19, 2012 again because the issues were "pre-existing." *Id.* ¶¶ 11-12. On March 19, 2015, Plaintiff alleges that Erie dropped her from the policy because Plaintiff "was engaging in a dog breeding operation." *Id.* at 11 ¶ 15. And despite attempts by Plaintiff to reinstate the policy, Erie allegedly declined to do so.

## B.  Procedural Background

On December 23, 2021, Plaintiff filed a complaint against Private Defendants, Erie, and Federal Defendants. Dkt. 1. That same day, Plaintiff filed an emergency motion to stay the sale of her home. Dkt. 2. On December 29, 2021, Magistrate Judge Buchanan issued a Report and Recommendation ("R&R") denying Plaintiff's emergency motion. Dkt. 12. Plaintiff amended her complaint on December 29, 2021, adding the Law Office of Gerald Shapiro as a named defendant. Dkt. 9. All defendants returned executed summons except for the Law Office of Gerald Shapiro, claiming that Mr. Shapiro did not work in the Manassas office and therefore service was refused. *See* Dkt. 17; 59. This Court adopted Judge Buchanan's R&R on January 13, 2022. Dkt. 23. On January 19, 2022, Private Defendants filed a motion to dismiss. Dkt. 25. On January 27,

2022, Erie filed a motion to dismiss and for relief from misjoinder, Dkt. 33, which it then refiled as separate motions the next day, Dkt. Nos. 38; 40.  Plaintiff then objected to this Court's decision adopting the R&R on January 31, 2022, moving for reconsideration of this Court's decision.  Dkt. 42.  Plaintiff then filed her opposition to Private Defendants' motion to dismiss on March 7, 2022 following the Court's grant of an extension to file.  Dkt. Nos. 52; 53.  Private Defendants filed their reply brief on March 11, 2022.  Dkt. 64.  That day, Federal Defendants also filed a motion to dismiss for lack of jurisdiction.  Dkt. 60.  Plaintiff then filed a sur-reply to Private Defendants' reply brief without leave of court on March 30, 2022.  Dkt. 73.  On April 20, 2022, Plaintiff filed her opposition to Federal Defendants' motion to dismiss and the Court deemed that filing timely on April 21, 2022.  Dkt. Nos. 77; 78.  On April 25, 2022, Federal Defendants filed a reply to Plaintiff's opposition.  Dkt. 80.  On May 25, 2022, the Court ordered that Plaintiff have an additional thirty days to serve Defendant the Law Offices of Gerald Shapiro.  Dkt. 81.

## II.  STANDARD OF REVIEW

### A.  Rule 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) provides for the dismissal of an action if the Court lacks subject matter jurisdiction over a defendant.  Defendants can challenge subject matter jurisdiction through a facial challenge to the complaint or a factual challenge to the allegations therein.  *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009).  A facial challenge argues that the complaint fails to allege facts sufficient to support a finding that a court has subject matter jurisdiction.  *Id.*  Thus, if the Rule 12(b)(1) motion is a facial challenge, "the plaintiff, in effect, is afforded the same procedural protection as he would receive under a Rule 12(b)(6) consideration."  *Id.* (quoting *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982)).  That is, the factual allegations of the complaint are treated as true.  *Id.*  In contrast, a factual challenge argues that the

"jurisdictional allegations of the complaint" are not true.  *Id.* (quoting *Adams*, 697 F.2d at 1219).

Accordingly, in a factual challenge, there is no presumption that the facts in the complaint are true.

*Id.*  A party moving for dismissal for lack of subject matter jurisdiction should prevail only if

material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter

of law.  *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th

Cir. 1991).

### B.  Rule 12(b)(6)

In order to survive a motion to dismiss brought under Federal Rule of Civil Procedure

12(b)(6), a complaint must set forth "a claim to relief that is plausible on its face." *Twombly*, 550

at 570.  A claim is facially plausible "when the plaintiff pleads factual content that allows the court

to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*,

556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).  When reviewing a motion brought under Rule

12(b)(6), the Court "must accept as true all of the factual allegations contained in the

complaint," drawing "all reasonable inferences" in the plaintiff's favor. *E.I. du Pont de Nemours*

*& Co.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted).  "[T]he court 'need not accept the

[plaintiff's] legal conclusions drawn from the facts,' nor need it 'accept as true unwarranted

inferences, unreasonable conclusions, or arguments.'" *Wahi v. Charleston Area Med. Ctr., Inc.*,

562 F.3d 599, 616 n.26 (4th Cir. 2009) (quoting *Kloth v. Microsoft Corp.*, 444 F.3d 312, 319 (4th

Cir. 2006)).  Generally, courts may not look beyond the four corners of the complaint in evaluating

a Rule 12(b)(6) motion.  *See Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 508

(4th Cir. 2015).

In addition to this general pleading standard, "fraud-based claims must satisfy Rule 9(b)'s

heightened pleading standard." *United States ex rel. Grant v. United Airlines, Inc.*, 912 F.3d 190,

196 (4th Cir. 2018) (citing *United States ex rel. Nathan v. Takeda Pharm. N. Am., Inc.*, 707 F.3d 451, 455-56 (4th Cir. 2013)).  "Rule 9(b) requires that 'a party must state with particularity the circumstances constituting fraud or mistake.'"  *Id.* (quoting Fed. R. Civ. P. 9(b)).  Further, when a plaintiff fails to plead fraud with particularity under Rule 9(b)'s pleading requirements, the omission "is treated as a failure to state a claim under Rule 12(b)(6)."  *Harrison v. Westinghouse Savanna River Co.*, 176 F.3d 776, 783 n.5 (4th Cir. 1999).

Mindful that Plaintiff is proceeding *pro se*, this Court liberally construes her filings. *Jackson v. Lightsey*, 775 F.3d 170, 177 (4th Cir. 2014).  That a *pro se* complaint should be liberally construed neither excuses a *pro se* plaintiff of her obligation to "clear the modest hurdle of stating a plausible claim" nor transforms the court into her advocate.  *Green v. Sessions*, No. 1:17-cv-1365, 2018 WL 2025299, at *8 (E.D. Va. May 1, 2018), *aff'd*, 744 F. App'x 802 (4th Cir. 2018).

### III.  ANALYSIS

This Court construes the Motion as a facial challenge to the Complaint and therefore accepts all facts contained within the Complaint as true, as it must at the motion-to-dismiss stage. *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555.  This Court takes Plaintiff's circumstances, allegations, and the resulting difficulties Plaintiff continues to experience very seriously. However, for the reasons that follow, this Court finds that Plaintiff has failed to plead sufficient facts supporting a plausible basis for any of the claims she asserts in her Amended Complaint, which this Court has liberally construed.

### A.  Federal Defendants' Motion to Dismiss

According to the Amended Complaint, HUD has allegedly violated Plaintiff's First and Fourth Amendment rights, 18 U.S.C. §§ 1001, 1341, the HUD Handbook 4000.1 § II(A)(3), 400.1 § II(D), the CARES Act, and committed general mortgage fraud and engaged in predatory lending.

Specifically, Plaintiff alleges that HUD violated her First Amendment right to redress her grievances and that HUD violated her Fourth Amendment right to engage in an investigation into her claims against HUD.  And HUD allegedly violated the aforementioned federal statutes and guidelines because it "failed to assist" Plaintiff "by any reasonable means" when Plaintiff notified HUD of alleged mortgage fraud, predatory lending, and violations of Plaintiff's FHA loan by her servicer. Dkt. 9 at 9 ¶ 15.  As such, Plaintiff seeks monetary damages and a court order requiring HUD to "work with [] Plaintiff to get her into a 'NEW' home [] she can afford that allows [] Plaintiff to have her dogs and payments that is no more than a $500.00 payment." *Id.* at 22.  In briefing, Plaintiff does not provide any statutory analysis or case law support her position.[3]

As to claims brought against HUD for monetary damages, Federal Defendants argue that there is no subject matter jurisdiction considering the record reveals no evidence that Plaintiff ever filed a claim for injury or damages with HUD under the Federal Tort Claims Act ("FTCA"). Dkt. 61 at 7.  Given there is no waiver of immunity for constitutional violations by federal officials under FTCA, and because Plaintiff has not brought a cause of action against any individual officials, Federal Defendants also argue that there are no grounds to bring a *Bivens* action. *Id.* at 8 (citing *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971)).  Nor do Federal Defendants believe Plaintiff's statutory or HUD Handbook claims are permitted because none of these statutes or agency rules cited by Plaintiff expressly permit a private right of action for monetary damages. *Id.* at 8-10.

Federal Defendants further argue that Plaintiff's injunctive claims are also without legal basis.  For one, they maintain that HUD's alleged inaction falls within the agency's discretion and

---

[3]  At no point in briefing does Plaintiff support any of her claims with analysis around the statutes and regulatory guidance she cites or advance any case law as support for her propositions. *See generally* Dkt. Nos. 53; 77.

is therefore unreviewable.  *Id.* at 11.  According to Federal Defendants, even if HUD's alleged inaction were reviewable, Federal Defendants claim Plaintiff's lack of Article III standing precludes any injunctive relief—in large part because Plaintiff cannot prove adequate redressability of the harms Plaintiff alleges.  *Id.* at 12-15.  As to Plaintiff's First and Fourth Amendment claims, Federal Defendants assert that Plaintiff's ability to petition her grievances with HUD is not at issue in the Amended Complaint and Plaintiff has no statutory right to compel HUD's agency review and response.  *Id.* at 20-22.  Nor has Plaintiff, according to Federal Defendants, pleaded any factual basis to support any of the elements of fraud or negligence against HUD to state a claim for relief.  *Id.* at 22-23.

Plaintiff also asserts that the IRS has allegedly violated 28 U.S.C. § 2680, 15 U.S.C. § 1673, and 26 U.S.C. § 6502.  She alleges that the IRS wrongfully garnished her social security wages for the month of December 2021 despite Plaintiff having engaged the Community Tax Law Project to assist in removing the encumbrances on the home.  Dkt. 9 at 21 ¶¶ 2-3.  Moreover, she alleges the IRS has attempted to collect debts outside its statutorily mandated 10-year recovery period and that the IRS seeks interest and penalties in excess of what Plaintiff actually owes.  *Id.* ¶¶ 4-5.  Plaintiff petitions this Court to "review" her "IRS debt and correct the egregious fees and penalties" and order that the IRS "return the December 2021 garnishment" to Plaintiff.  *Id.* at 22-23.

Federal Defendants counter that injunctive claims against the IRS should be dismissed for lack of subject matter jurisdiction.  Without having exhausted her administrative remedies before the IRS, Federal Defendants maintain that the IRS has not waived its sovereign immunity and that any agreement from the Community Tax Law Project has no bearing on the exhaustion of Plaintiff's administrative remedies before the IRS.  Moreover, Federal Defendants submit that

Plaintiff's claims enjoining the collecting of her taxes are barred by the Tax Anti-Injunction Act ("TAIA").  Beyond the jurisdictional dispute, Federal Defendants argue that Plaintiff fails to state a claim against the IRS on three grounds.  First, she has not alleged that the tax liens on her property are "inaccurate or 'egregious charging'" to suggest they were in any way improper.  *Id.* at 24. Second, she has not alleged when the garnishment of her social security wages occurred or any other key details of impropriety that might make the claim plausible.  *Id.*  And third, beyond her bare assertions, Plaintiff has not alleged the cutoff when the IRS would allegedly surpass the 10-year period to collect on a tax or to file suit to extend the period.

Plaintiff's opposition rehashes many of the allegations made in the Amended Complaint, adds color to her preexisting claims, and argues Federal Defendants filed their motion to dismiss one day late.  In their reply, Federal Defendants argue they filed their motion in compliance with the 60-day period beginning the day following the service of the Amended Complaint per Federal Rule of Civil Procedure 6(a).

"As a general proposition, the United States may not be sued without its consent, and its consent must be unequivocally manifested in the plain language of a statute."  *Ready Trans., Inc. v. Military Mgmt. Command*, 86 F. App'x 561, 565 (4th Cir. 2004) (citing *Lana v. Pena*, 518 U.S. 187, 192 (1996)).  Thus, "[t]o sustain a claim that the Government is liable for awards of monetary damages, the waiver of sovereign immunity must extend unambiguously to such monetary claims."  *Lana*, 518 U.S. at 192 (citing *United States v. Nordic Vill., Inc.*, 503 U.S. 30, 33-34 (1992)).  Otherwise, courts "do not have subject matter jurisdiction over claims against the federal government and its agencies."  *Patock v. Fox News Tele. Channel*, No. 1:11-cv-974, 2012 WL 695892, at *2 (E.D. Va. Mar. 1, 2012).  Therefore, a plaintiff may proceed with a claim against a federal agency or a federal officer in his official capacity if the plaintiff's claims "are authorized

by a statutory waiver of sovereign immunity." *Id.* "FTCA is a limited statutory waiver of this immunity." *Perkins v. United States*, 55 F.3d 910, 913 (4th Cir. 1995) (citing 28 U.S.C. §§ 1346, 2671-80)).

In practice, "[a] prospective plaintiff seeking redress against a federal official for injury has two distinct avenues of relief.  [H]e may file a common law tort claim against the United States under FTCA and—or in the alternative—he may file a constitutional tort claim against the individual officer under *Bivens*." *Sanchez v. McLain*, 867 F. Supp. 2d 813, 816-17 (S.D.W. Va. 2011); *see also Unus v. Kane*, 565 F.3d 103, 122 (4th Cir. 2009) (quoting *Estate of Trentadue ex rel. Aguilar v. United States*, 397 F.3d 840, 858 (10th Cir. 2005)) (adopting position of sister circuits in viewing a judgment on an FTCA claim as precluding a separate *Bivens* claim "arising out of the same actions, transactions, or occurrences").

A tort claim under FTCA "shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues[.]"  28 U.S.C. § 2401(b). "FTCA's implementing regulations consider a claim to be properly presented when the government receives a completed SF 95 (or other written notification of an incident), and 'a claim for money damages in a sum certain[.]'" *Kokotis v. U.S. Postal Serv.*, 223 F.3d 275, 278 (4th Cir. 2000) (quoting 28 C.F.R. § 14.2(a)).  "Requesting a sum certain is 'a necessary element of any FTCA administrative claim'" and the failure to do so within the two-year statute of limitations "deprives a district court of jurisdiction over any subsequently filed FTCA suit." *Patock*, 2012 WL 695892, at *3 (quoting *Kokotis*, 223 F.3d at 278).  In the event an FTCA suit is properly before a district court, the plaintiff must raise its claims against the United States rather than any involved agency.  28 U.S.C. §§ 1346(b)(1), 2679(a); *see also Holmes v. Eddy*, 341 F.2d 477, 480 (4th Cir. 1965) (affirming dismissal of complaint pursuing an FTCA claim against federal agency because

the United States had not consented to the naming of that agency in the suit); *Chang-Williams v. Dep't of the Navy*, 766 F. Supp. 2d 604, 608 (D. Md. 2011) ("FTCA expressly provides that federal agencies are not amendable to suit under its provisions . . . . [FTCA] provides for liability against only the United States and plaintiffs seeking relief under [FTCA] may pursue it against that defendant alone." (internal citations omitted)).

This Court proceeds by first considering Federal Defendants' brief in support of its motion as being timely filed pursuant to the 60-day period afforded to the United States and its agencies to respond to a complaint upon the U.S. Attorney's Office's ("USAO") receipt of the summons. Fed. R. Civ. P. 12(a)(2). In calculating this period to respond, Federal Rule of Civil Procedure 6(a) directs that the "day of the event that triggers the period" be "excluded" from calculating the last day to timely file an answer to a complaint. Fed. R. Civ. P. 6(a). Because Plaintiff filed her Amended Complaint on December 29, 2021, and the summons was not served upon the USAO until January 10, 2022, the 60-day period for Federal Defendants to respond began running on January 11, 2022 and ended on March 11, 2022. Federal Defendants filed their motion to dismiss on March 11, 2022 and it is therefore considered timely.

### 1. Damages Claims Against HUD

#### i. Constitutional Claims

While Plaintiff alleges violations of the First and Fourth Amendment in connection with what Plaintiff characterizes as HUD's failure to properly service Plaintiff's mortgage and adequately address Plaintiff's grievances, this Court lacks subject matter jurisdiction over such claims. To begin, Plaintiff has improperly named HUD as a defendant rather than the United States, which standing alone is sufficient to merit dismissal. *See, e.g.*, *Holmes*, 341 F.2d at 480. But even if Plaintiff brought these claims against the United States, no federal law mandates the

waiver of immunity for alleged constitutional tort violations under FTCA.  The statute's limited waiver of sovereign immunity reaches no further than the limits of private tort liability, which is dictated by the law of the place where the alleged tort occurred.  *See* 28 U.S.C. § 2674; *Williams v. United States*, 242 F.3d 169, 175 (4th Cir. 2001).  It follows that "[a] claim based exclusively on federal law may not be invoked under [FTCA]."  *Ready Transp.*, 86 F. App'x at 565 (citing *Washington v. Drug Enforcement Admin.*, 183 F.3d 868 (8th Cir. 1999)).  And even if Plaintiff were able to raise these claims under FTCA, she has not properly exhausted her claim administratively with HUD.  *See Brown v. United States*, No. 2:21-cv-69, 2021 WL 1876129, at *3 (E.D. Va. May 10, 2021) ("FTCA explicitly deprives a court of subject matter jurisdiction over a case where a plaintiff has failed to exhaust his administrative remedies by bringing a claim before the appropriate federal agency.").  Not once in the Amended Complaint does Plaintiff indicate that she filed an official legal claim with HUD prior to filing her case before this Court.  *See generally* Dkt. 9; *see also* Dkt. 61-1 at 2 (confirming HUD has no record of Plaintiff filing any FTCA claim).

Suggesting the application of *Bivens* also proves futile because such a cause of action "is available only against federal officials in their individual capacities," and Plaintiff has not named any individual federal officials as defendants in this case.  *Byrd v. United States*, No. 1:09-cv-1208, 2010 WL 4922519, at *2 (E.D. Va. Nov. 29, 2010); *see also F.D.I.C. v. Meyer*, 510 U.S. 471 (1994) (noting that "a damages remedy against federal agencies would be inappropriate even if such a remedy were consistent with *Bivens*").

Even if Plaintiff's constitutional claims proceeded to the merits, both claims fail to state a plausible claim.  Applying a liberal construction of Plaintiff's Amended Complaint, Plaintiff appears to argue that HUD violated her right "to petition the government for a redress of grievances" under the First Amendment.  U.S. Const. amend. I.  But "ignor[ing] her pleas for help"

and "fail[ing] to take a proper report or investigate" Plaintiff's grievances does not infringe upon Plaintiff's right to "appeal to courts and other forums established by the government for resolution of legal disputes." *Compare* Dkt. 9 at 8-9 *with Borough of Duryea, Pa. v. Guarnieri*, 564 U.S. 379, 387 (2011).  According to the Amended Complaint, "Plaintiff received subsequent emails from [a] HUD employee" and spoke with her about her concerns.  Dkt. 9 at 9 ¶ 14.  That HUD did not address Plaintiff's concerns in the manner she desired does not invalidate HUD's responsiveness to Plaintiff's communications. *Cf. Vets-Help.org-NC, Inc. v. Stein*, No. 5:16-cv-199, 2017 WL 3262102, at *4 (W.D.N.C. July 31, 2017) ("A right to compel a public official to prosecute another individual does not exist, ergo failure to prosecute does not violate the First Amendment right to petition the government for a redress of grievances."); *see also Evans v. Chesapeake & Potomac Tel. Co. of Md.*, No. M-80-2898, 1981 WL 145, at *2 (D. Md. Apr. 2, 1981) (holding that a plaintiff failed to state a claim that an administrative agency violated the plaintiff's right to petition under the First Amendment when the agency "in no way prohibited or even impaired the plaintiff's right to access [] the court").  For this reason Plaintiff's Fourth Amendment claim does not survive the Rule 12(b)(6) standard.  Plaintiff does not enjoy an "independent constitutional right to investigat[e]" HUD. *See Gilliam v. Sealey*, 932 F.3d 216, 240 (4th Cir. 2019) (stating that there is no such right with respect to a third party in a criminal case).

Accordingly, Plaintiff's constitutional claims against HUD merit dismissal.

### ii. Statutory and Regulatory Claims

While Plaintiff pleads a panoply of claims under federal statute, this Court finds no evidence that (a) Plaintiff enjoys a private right of action under any of the cited statutes or (b) that the federal government has explicitly or even implicitly waived its sovereign immunity under any of the statutes Plaintiff cites.  If a court cannot interpret the underling statute as having "disclose[d]

16

the intent to create" an implied cause of action for a private plaintiff to bring a claim for money damages against the United States, this Court's hands are tied by well-settled separation of powers doctrine. *See Stoneridge Inv. Partners, LLC v. Sci.-Atl., Inc.*, 552 U.S. 148, 164 (2008). Plaintiff's reliance on 18 U.S.C. §§ 1001, 1341—irreducibly criminal statutes—provide her no legal mechanism to advance her claims against HUD, or properly, the United States for that matter. *See, e.g.*, *Doe v. Broderick*, 225 F.3d 440, 447 (4th Cir. 2000) ("The Supreme Court historically has been loath to infer a private right of action from a bare criminal statute."); *see also Fed. Sav. & Loan Ins. Corp. v. Reeves*, 816 F.2d 130, 137 (4th Cir. 1987) (rejecting private right of action for 18 U.S.C. § 1001; *Hilgeford v. Nat'l Union Fire Ins. Co. of Pittsburgh*, No. 3:08-cv-669, 2009 WL 302161, at *4 (E.D. Va. Feb. 6, 2009) (rejecting private right of action for 18 U.S.C. § 1341).

Plaintiff's CARES Act claim suffers the same fate because courts agree Congress did not provide a private cause of action against other private parties or the United States. *See, e.g.*, *Profiles, Inc. v. Bank of Am. Corp.*, 453 F. Supp. 3d 742, 751 (D. Md. 2020) ("The Court is not persuaded that the language of the CARES Act evidences the requisite congressional intent to create a private right of action."); *Johnson v. JPMorgan Chase Bank, N.A.*, 488 F. Supp. 3d 144, 155 (S.D.N.Y. 2020) (holding there is no private right of action to enforce the CARES Act); *Radix Law PLC v. JPMorgan Chase Bank NA*, 508 F. Supp. 3d 515, 520 (D. Ariz. 2020) (same). Nor is there any footing for Plaintiff's claims pursuant to the HUD Handbook. *See Kersey v. PHH Mortg. Corp.*, No. 3:09-cv-726, 2010 WL 3222262, at *3 (E.D. Va. Aug. 13, 2010) ("HUD regulations do not provide the [p]laintiff with a private right of action.").

Moreover, none of these statutes or regulations waive the United States' presumptive sovereign immunity. *See Ready Transp.*, 86 F. App'x at 565. Even if Plaintiff pursued her claims by properly raising them with HUD through the administrative process FTCA blesses, "FTCA

does not waive the United States' immunity against liability for violation of its own statutes." *Williams v. United States*, 242 F. 3d 169, 173 (4th Cir. 2001). No matter how one parses Plaintiff's statutory claims, Congress has not ensouled these statutes with an implied private cause of action and a waiver of sovereign immunity. Accordingly, Plaintiff's statutory and regulatory claims merit dismissal.

### iii.  Fraud and Predatory Lending Claim

Plaintiff's claim of "waste fraud and abuse committed within HUD during the inspection of Plaintiff's initial home purchase or repeated reporting" also merits dismissal. Dkt. 9 at 5. Because this cause of action sounds in fraud, the heightened pleading requirements of Federal Rule of Civil Procedure 9(b) apply. Plaintiff must, at a minimum, allege "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *McCauley v. Home Loan Inv. Bank, F.S.B.*, 710 F.3d 551, 559 (4th Cir. 2013). Specifically, a plaintiff is required to identify "'the who, what, when, where, and how of the alleged fraud' before access to the discovery process should be granted." *Murphy v. Capella Educ. Co.*, 589 F. App'x 646, 652 (4th Cir. 2014) (quoting *United States ex rel. Wilson v. Kellogg Brown & Root*, 525 F.3d 370, 379 (4th Cir. 2008)).

Here, Plaintiff has neglected to plead any allegations demonstrating that HUD, by its agents, took steps to conceal or minimize disclosure of damage, including the presence of mold. Indeed, Plaintiff allegedly hired a private home inspector who, like the HUD FHA Appraiser, identified wood rot from prior water damage but "made no reference to mold" and did not direct Plaintiff to get a mold inspection. Dkt. 9 at 7 ¶¶ 2-3. Applying a favorable reading to the bare allegations of the Amended Complaint, Plaintiff still makes out no plausible claim that HUD committed fraud in connection with Plaintiff's home purchase.

2.  Injunctive Relief Against HUD

Plaintiff also petitions this Court to require HUD investigate her complaints in Plaintiff's preferred manner and to place her in a new, affordable home.  Dkt. 9 at 22.  But Plaintiff is without a proper legal mechanism to achieve either remedy.

For one, Plaintiff's challenge to HUD enforcement decisions is not subject to judicial review.  Plaintiff avers that HUD has "failed to assist" her "by any reasonable means as outline[d] by Congress when reporting Mortgage fraud, predatory lending and banking behavior or violations."  Dkt. 9 at 9 ¶ 15.  Any agency action "committed to agency discretion by law," *ICC v. Brotherhood of Locomotive Eng'rs*, 482 U.S. 270, 282 (1987), has "traditionally been considered unreviewable."  *Speed Mining, Inc. v. Fed. Mine Safety & Health Rev. Comm'n*, 528 F.3d 310, 316 (4th Cir. 2008).  Investigation of an individual's complaints falls within those agency actions committed to HUD's discretion by law.  *Wilder v. Preston*, No. RDB-9-155, 2009 WL 4062347, at *3 (D. Md. Nov. 23, 2009) ("HUD is granted substantial discretion to determine whether to pursue an enforcement action."); *Am. Disabled for Attendant Programs Today v. HUD*, No. 96-5881, 1998 WL 113802, at *3 (E.D. Pa. Mar. 12, 1998) ("HUD's alleged inaction with regard to self-initiated enforcement activities is not reviewable" when plaintiff has taken no prior recourse within the "privately-initiated administrative enforcement schemes established by both the statute and the regulations").

In any event, Plaintiff lacks Article III standing to assert her injunctive claims against HUD.  To establish standing, Plaintiff must show "(1) an injury in fact, (2) a sufficient causal connection between the injury and the conduct complained of, and (3) a likel[ihood] that the injury will be redressed by a favorable decision."  *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157-58 (2014).  While Plaintiff has alleged injury-in-fact related to the alleged undisclosed living

conditions in her home, such injuries are not "fairly traceable" to HUD's conduct.  *Doe v. Va. Dep't of State Police*, 713 F.3d 745, 755 (4th Cir. 2013).  The causation inquiry under the second part of the standing requirement asks whether it is "likely that the injury was caused by the conduct complained of and not by the independent action of some third party not before the court."  *Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.*, 204 F.3d 149, 154 (4th Cir. 2000).  Considering that none of the named defendants are alleged to have contributed to the outgrowth of mold and other deficiencies of the home, Plaintiff's alleged injuries are not traceable to HUD.

Plaintiff's injunctive claim also fails the third element of Article III standing because Plaintiff's allegations, taken as true, fail to demonstrate how ordering HUD to gift her a new home with an affordable monthly mortgage payment addresses the injury-in-fact—the alleged mold problem.  Federal courts have previously ruled against enjoining HUD where such relief also proved to be beyond the ostensible power or obligation of the agency.  *See, e.g.*, *Anderson v. Becerra*, No. 1:21-cv-175, 2021 WL 3115976, at *3 (E.D. Va. July 22, 2021) (no standing to seek injunctive relief selling government-owned property to plaintiff where government defendant "ha[d] no obligation to sell government-owned property to private parties"); *Bombet v. Donovan*, No. 13-118, 2015 WL 1276569, at **3-4 (M.D. La. Mar. 19, 2015) (holding that the court is "without power to order HUD to provide a particular form of relief" as plaintiff could not show redressability); *Robbins v. HUD*, 72 F. Supp. 3d 1, 7 (D.D.C. 2014) (holding that HUD cannot provide a plaintiff injunctive relief for her claims on redressability grounds).

An issue is moot when it is no longer "live" or "the parties lack a legally cognizable interest in the outcome."  *United States v. Hardy*, 545 F.3d 280, 283 (4th Cir. 2008) (quoting *Powell v. McCormack*, 395 U.S. 486, 496 (1969)).  Because Plaintiff's lack of Article III standing prevents

any cognizable claim for receiving a new property from HUD, her petition for injunctive relief is rendered moot and must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1).

### 3.  Claims Against IRS

As with Plaintiff's failure to establish subject matter jurisdiction for this Court to hear her claims against HUD, Plaintiff so too fails to demonstrate this Court's subject matter jurisdiction over her claims against the IRS.  Having not cited to any statute or case law interpreting the United States to have waived its sovereign immunity with respect to Plaintiff's claims against the IRS, this Court considers the claims against the IRS azoic.  *Patock*, 2012 WL 695892, at *2.

A liberal reading of Plaintiff's Amended Complaint suggests two claims against the IRS, each requesting either monetary or injunctive relief: (1) a refund of alleged tax overcharges related to tax liens, fees, and interest and (2) the return of alleged improperly garnished wages.  *See* Dkt. 9 at 21-23.

Beyond demonstrating that the United States has waived its immunity, obtaining a tax refund requires that Plaintiff allege she has administratively exhausted her remedies.  Pursuant to statute, Plaintiff must, at the outset, file a claim with the IRS seeking a refund no more than three years from the time the return was filed or two years from the time the tax was paid, whichever period is later.  26 U.S.C. § 6511(a).  An exhaustion requirement similarly applies to any suit alleging the erroneous assessment or collection of a sum by the IRS.  26 U.S.C. § 7422(a) (requiring a claim for refund or credit to be filed with the Secretary of the Treasury).  Plaintiff's collaboration with the Community Tax Law Project does not satisfy her administrative exhaustion requirement before the United States Department of the Treasury.  Instead, the United States Supreme Court has held that "[a] taxpayer seeking a refund of taxes erroneously or unlawfully assessed or collected may bring an action against the Government" so long as "the taxpayer []

compl[ies] with the tax refund scheme established in the Code," including the procedure outlined in 26 U.S.C. § 7422(a). *United States v. Clintwood Elkhorn Min. Co.*, 553 U.S. 1, 4-5 (2008). While this Court is aware of certain potential statutes, not cited by Plaintiff, that could be interpreted to implicitly waive sovereign immunity for a suit related to the unauthorized collection by the IRS, the taxpayer still must satisfy the administrative exhaustion requirement.[4]

To the extent Plaintiff seeks to enjoin the IRS from collecting any tax, her claim is barred by the TAIA. *See* 26 U.S.C. § 7421. Given the TAIA expressly prohibits any taxpayer from progressing a suit "for the purpose of restraining the assessment or collection of any tax," 26 U.S.C. § 7421(a), this Court generally cannot interfere with the collection of Plaintiff's taxes.[5] Rather, the taxpayer must pursue the disputed sums in a suit for a refund, which requires that they properly exhaust their administrative outlets before the IRS—allegations which remain conspicuously absent from the Amended Complaint. *See Bob Jones Univ.*, 416 U.S. at 736-37; *see also* 26 U.S.C. §§ 7432(d)(1), 7433(d)(1). Here, the disputed interest and penalties, tax liens, and garnishment of wages constitute collection actions which this Court may not disturb under the TAIA. *See Perkins*, 55 F.3d at 915-16 (holding that the collection of tax exemption under FTCA applies to all "bona fide effort[s] to assess or collect a particular tax debt"); *Zinstein v. United States*, No. 1:13-cv-633, 2013 WL 5504418, at *1 (E.D. Va. Oct. 2, 2013) (categorizing a tax lien on a residence as a

---

[4] For example, 26 U.S.C. § 7433(a) permits a taxpayer to bring a civil action for damages against the United States in a district court but imposes the exhaustion requirement under § 7433(d)(1). 26 U.S.C. § 7432(a) also permits a taxpayer to file a civil action for damages against the United States for an alleged failure to release a lien, but also requires administrative exhaustion under § 7432(d)(1).

[5] While the Supreme Court has permitted a taxpayer to seek injunctive relief in the event irreparable injury would occur *and* "that under no circumstances could the Government ultimately prevail," Plaintiff's allegations fall well short of this high standard. *Bob Jones Univ. v. Simon*, 416 U.S. 725, 737 (1974) (quoting *Enochs v. Williams Packing & Nav. Co.*, 370 U.S. 1, 7 (1962)).

collection action); *Reeve v. SSA*, No. 1:04-cv-1008, 2005 WL 998595, at *1 (E.D. Va. Apr. 28, 2005) (categorizing a levy deduction form a social security check as a collection of tax).

Revisiting the Amended Complaint, two of the three statutes cited by Plaintiff for her claims against the IRS do not provide her an avenue to seek relief before this Court. While Plaintiff relies on 28 U.S.C. § 2680, a provision of FTCA, for her claims against the IRS, FTCA does not waive immunity for a "claim arising in respect of the assessment or collection of any tax or customs duty." *Perkins*, 55 F.3d at 913 (citing 28 U.S.C. § 2680(c)). Plaintiff's reliance on 15 U.S.C. § 1673 also proves unavailing given that the restriction on garnishment does not apply for "any debt due for any State or Federal tax." 15 U.S.C. § 1673(b)(1)(C).

The third statute, 26 U.S.C. § 6502, limits the IRS to a 10-year statute of limitations for collection, measured from the time of assessment. *See* 26 U.S.C. § 6502(a)(1). And while Plaintiff's claims against the IRS involve the years 2010, 2011, and 2013, she provides no additional factual detail as to when any assessments were made or when the IRS' collection period should have ended. Because Plaintiff has not provided the necessary "factual content that allows the court to draw the reasonable inference that the [IRS] is liable for the misconduct alleged," Plaintiff's claim pursuant to § 6502 is not facially plausible. *Iqbal*, 556 U.S. at 678. To be sure, Plaintiff's other tax claims suffer from the same dearth of factual material. Plaintiff provides no details related to why the disputed liens are "egregious charging," Dkt. 9 at 21 ¶ 1, or why the garnishment of her wages or the excess interest and penalties were improper. Without more, these allegations are conclusory.

Accordingly, Plaintiff's claims against the IRS are without subject matter jurisdiction or plausibility, meriting dismissal under both Rule 12(b)(1) and Rule 12(b)(6).

B.  Private Defendants' Motion to Dismiss

Against BofA, Plaintiff alleges violations of Sections 805, 808, and 809(b) of the Fair Debt

Collection Practices Act ("FDCPA") codified at 15 U.S.C. §§ 1692c, f(1), g(b); and 12 U.S.C. §

2605(B)(1).  Specifically, BofA allegedly failed to communicate the transfer of Plaintiff's loan to

CMS and failed to provide Plaintiff with her preferred loan structure.  Against CMS, Plaintiff

alleges violations of HUD Handbook 4000.1§§ II(8)(A)(vi), III(A)(2)(e)(i)-(iii); the CARES Act;

15 U.S.C. §§ 1692d(5), e(8), g(b); 18 U.S.C. §§ 1001-02, 1341; and Virginia Code § 18.2-213.2.

In liberally construing Plaintiff's Amended Complaint, it appears that CMS allegedly violated

these laws because of how CMS managed Plaintiff's FHA loan, her HAMP loan application,

monthly payment schedule, and her foreclosure.  Plaintiff also appears to allege Private Defendants

violated her Fourth Amendment right to investigate her claims against them.  Dkt. 9 at 4.  As a

result, she seeks a court order requiring BofA and CMS to, *inter alia*:

1.  "correct the damage to her credit and restore her credit to what it was before purchasing the home;"

2.  "buy her out of her home and allow[] [her] to keep her equity so she can purchase a new home," or "fix all the deficiencies with the home and offer [her] a reverse mortgage;" and

3.  "correct the overbilling by CMS and remove the liens on her property."

*Id.* at 22.

Private Defendants assert that Plaintiff's claims against BofA fail to state a claim under

each of the statutes or agency rules raised in the Amended Complaint.  According to Private

Defendants, BofA does not qualify as a "debt collector" under the FDCPA and the one-year statute

of limitations has expired, making the FDCPA claim without moment.  Dkt. 26 at 5-6.  As to 12

U.S.C. § 2605(B)(1), Private Defendants maintain that the three-year statute of limitations under that statute is fatal to this claim. *Id.* at 6-7. And as to any general claim of fraud, Private Defendants argue that Plaintiff has not gone beyond conclusory statements of fraud, falling short of the high bar for pleading fraud. *Id.* at 7.

As to claims against CMS, Private Defendants argue Plaintiff's allegations demonstrate the lawfulness of CMS' actions. Private Defendants claim that Plaintiff does not enjoy a private action under the cited provisions of the HUD Handbook and secondly argue that CMS complied with the HUD Handbook in returning a partial payment with a pending foreclosure on Plaintiff's property. *Id.* at 8-9. Private Defendants take a similar position as to Plaintiff's CARES Act claim. First, they argue that Plaintiff enjoys no private right of action mandated by Congress. Second, Plaintiff has not pleaded any factual allegations that demonstrate CMS plausibly violated the CARES Act. Private Defendants also maintain that there is no private right of action under the HAMP Trial Payment Program ("TPP") for Plaintiff to advance legal claims against her loan servicer. *Id.* at 11-12. As to her fraud-related claims under 18 U.S.C. §§ 1001-02 and 1341, Private Defendants again argue that Plaintiff cannot sue in her private capacity—this time because these statutes are bare criminal statutes. Nor is there a common law ground to advance her fraud claim because, as Private Defendants already argued with respect to BofA, Plaintiff has not sufficiently pleaded specific facts describing the alleged fraud. *Id.* at 12-13. Lastly, like BofA, Private Defendants argue that CMS, as a mortgage servicing company, does not meet the definition of "debt collector" under the FDCPA and therefore is exempt from liability under the statute. *Id.* at 13-14.

1. Claims Against BofA

*i. FDCPA Claim*

To establish an FDCPA violation, a plaintiff must show that "(1) the debtor is a consumer as defined in § 1692a(3)[;] (2) the defendant is a debt collector as defined in § 1692a(6)[;] and (3) the defendant has committed some act or omission violating the statute." *Robinson v. Moynihan*, No. 3:21-cv-122, 2021 WL 2346107, at *5 (E.D. Va. Jun. 8, 2021) (citing *Withers v. Eveland*, 988 F. Supp. 942, 945 (E.D. Va. 1997)). The FDCPA applies to any "debt collector" which Congress defines as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). It is "well-settled" in the Fourth Circuit that "creditors, mortgag[ees], and mortgage servicing companies are not debt collectors and are statutorily exempt from liability under the FDCPA."[6] *See, e.g.*, *Scott v. Wells Fargo Home Mortgage, Inc.*, 326 F. Supp. 2d 709, 718 (E.D. Va.), *aff'd sub nom.*, 67 F. App'x 238 (4th Cir. 2003). Plaintiff's allegations against BofA relate to BofA's role as a former mortgagee and servicer of Plaintiff's mortgage. *See* Dkt. 9 at 11 ¶ 1 (alleging that BofA received Plaintiff's mortgage note shortly after closing), 13 ¶ 14 (alleging BofA transferred service of the loan), 14 ¶ 1 (alleging that while BofA transferred service of the loan to CMS, BofA retained the note as Plaintiff's mortgagee). BofA therefore does

---

[6] While the original language in *Scott* states "creditors, *mortgagors*, and mortgage servicing companies" do not qualify as debt collectors, the context of the opinion involves the question of whether a *mortgagee* is a "debt collector" under the FDCPA. 326 F. Supp. 2d at 718 (discussing the fact that Wells Fargo became the plaintiff's "mortgagee" and therefore the FDCPA claim had no legs) (emphasis added). As a matter of common sense, it does not logically follow that a mortgagor, *i.e.* the borrower, would be cast as a debt collector. As such, this Court interprets the quoted language to have mistakenly used the term *mortgagor* rather than *mortgagee*.

not qualify as a "debt collector" under the FDCPA.[7]  As such, Plaintiff's FDCPA claim against BofA fails to state a facially plausible claim as to the second FDCPA element and must be dismissed.

### ii. 12 U.S.C. § 2605 Claim

Plaintiff further alleges that BofA violated 12 U.S.C. § 2605(B)(1), a provision of the Real Estate Settlement Procedures Act ("RESPA"), by failing to alert her that the service of her loan had been transferred from BofA to CMS on September 15, 2016.  Dkt. 9 at 13 ¶ 14, 14 ¶ 1.  In § 2614 of RESPA, Congress instituted a three-year statute of limitations for claims raised under § 2605.  *See* 12 U.S.C. § 2614.  Because Plaintiff alleges that the improper notice occurred in 2016 and filed the original complaint before this Court on December 23, 2021, this claim falls outside the three-year statute of limitations.

Neither has Plaintiff expressly argued an equitable tolling defense.  Notwithstanding this fact, considering Plaintiff's *pro se* status, this Court examines whether an equitable tolling defense is even palatable.  The Fourth Circuit recently held that RESPA's statute of limitations periods contained in § 2614 are non-jurisdictional in nature and that the law therefore "does not preclude tolling on equitable grounds."  *Edmonson v. Eagle Nat'l Bank*, 922 F.3d 535, 547 (4th Cir. 2019).  Accordingly, such a showing requires that "(1) the party pleading the statute of limitations fraudulently concealed facts that are the basis of the plaintiff's claim; (2) the plaintiff failed to discover those facts within the statutory period, despite (3) the exercise of due diligence."  *Barnes*

---

[7] The exceptions to this rule trigger when the servicer either "(1) acquired the loan after the mortgagor defaulted or (2) treated the loan as in default upon acquiring it."  *Morgan v. Bayview Loan Serv., LLC*, 2020 WL 6626120, at *4 n.11 (citing *Ayres v. Ocwen Loan Serv., LLC*, 129 F. Supp. 3d 249, 277 (D. Md. 2015)).  Plaintiff has not alleged either of these conditions.  The Amended Complaint instead reveals that BofA transferred its servicer obligations to CMS on September 15, 2016, which predated any discussion of Plaintiff's bankruptcy filing on October 5, 2017.  Dkt. 9 at 8 ¶ 10.

*v. West, Inc.*, 243 F. Supp. 2d 559, 563 (E.D. Va. 2003) (quoting *Supermarket of Marlinton, Inc. v. Meadow Gold Diaries, Inc.*, 71 F.3d 119, 122 (4th Cir. 1995)).  This Court finds that Plaintiff's allegations are fatal to the second element of any possible equitable tolling claim.  Plaintiff explicitly alleges that she received notice of the transfer of settlement on October 3, 2016, which confirms she discovered the transfer within the statutory period.  Dkt. 9 at 13 ¶ 14.  Plaintiff's claim against BofA under 12 U.S.C. § 2605 is time-barred.

### iii.  Fraud Claim

In addition to the specific fraud alleged against HUD, discussed *supra*, Plaintiff generally avers fraud against all Defendants in this matter.  However, Plaintiff does not at minimum allege "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby" as it applies to BofA.  *McCauley*, 710 F.3d at 559.  Plaintiff has failed to meet even the minimum pleading requirements of Federal Rule of Civil Procedure 9(b) as to any fraud claim against BofA.

### 2.  Claims Against CMS

### i.  HUD Handbook Claim

As discussed *supra*, "HUD regulations do not provide [] Plaintiff with a private right of action."  *Kersey*, 2010 WL 3222262, at *3.  But even if Plaintiff could proceed on her HUD Handbook claim, the allegations in the Amended Complaint fail to state a claim upon which relief can be granted.  Plaintiff appears to claim that CMS violated § III(A)(2)(e)(iii) when CMS allegedly returned her May and June 2017 payments after Plaintiff allegedly received a foreclosure notice of intent on January 26, 2017.  Dkt. 9 at 15 ¶¶ 7, 9-13.  But that provision of the HUD Handbook 4000.1 permits the return of partial mortgage payments "when foreclosure has been started."  HUD Handbook 4000.1 § III(A)(2)(e)(iii)(A).  Plaintiff's claim as to HUD Handbook

4000.1 § II(8)(A)(vi) also fails to state a claim.  For one, such a section does not exist.  But if Plaintiff meant to cite to § II(A)(8)(vi), Plaintiff provides no discernable allegations in support of how CMS allegedly violated this section.

### ii.  HAMP TPP Claim

To the extent Plaintiff avers that CMS violated Plaintiff's HAMP TPP agreement in 2019, Plaintiff cannot proceed on this claim.  "Courts across the country, including this Court, have consistently concluded there can be no relief under HAMP because the program does not create a private right of action for borrowers against servicers or lenders." *Johnson  v. Bank of Am., N.A.*, No. 4:12-cv-105, 2012 WL 6052044, at *2 (E.D. Va. Dec. 5, 2012).  And any claim that CMS violated its implied covenant of good faith and fair dealing in allegedly breaching its HAMP agreement remains barred because no private cause of action exists.  *De Vera v. Bank of. Am., N.A.*, No. 2:12-cv-17, 2012 WL 2400627, at *2 (E.D. Va. Jun. 25, 2012) (collecting cases).

### iii.  CARES Act Claim

Relying on the CARES Act, Plaintiff alleges that CMS unlawfully reduced her deferment period from 180 days to 90 days, imposed "foreclosure threats," "erroneously" charged her interest, penalties, home inspection fees, and "other charges," and "fraudulently report[ed]" that Plaintiff had failed to make her payments when Plaintiff had obtained a deferment.  Dkt. 9 at 19 ¶¶ 34-36.  Echoing this Court's analysis with respect to Plaintiff's CARES Act claim against HUD, Plaintiff lacks a private right of action to enforce the CARES Act, which is sufficient to merit dismissal of her claim.  *See, e.g.*, *Profiles*, 453 F. Supp. 3d at 751; *Johnson*, 488 F. Supp. 3d at 155; *Radix Law*, 508 F. Supp. 3d at 520.

But even if Plaintiff's claim could proceed, her claim fails because the allegations in the Amended Complaint reveal no actions taken by CMS which violate the CARES Act.  Despite

29

Plaintiff's allegations of CMS having decreased her deferment period below 180 days, Plaintiff maintains that her CARES Act request extended "until July/August, 2021." Dkt. 9 at 19 ¶ 37. Considering Plaintiff's last alleged deferral request occurred on September 29, 2020, *id.* ¶ 34, Plaintiff appears to have benefitted from a deferral period several months beyond the 180 days she requested, resulting in no alleged harm. *See also* Dkt. 53 at 17 ¶ 31 (describing that Plaintiff's mortgage still remained in deferment as of September 2021). And while CMS allegedly sent "foreclosure threats," Plaintiff fails to complain or even argue in briefing how these actions violated the CARES Act. Moreover, although the CARES Act limits the amount of interest and fees charged to a mortgagor, Plaintiff has not alleged that the amount charged to her exceeds this limit. *Compare id.* ¶¶ 35-36 *with* 15 U.S.C. §§ 9056(b)(3), (c)(1) (limiting "fees, penalties, or interest" to "the amounts scheduled or calculated as if the borrower made all contractual payments on time and in full under the terms of the mortgage contract").

Lastly, the CARES Act does not prohibit the reporting of Plaintiff's loan as delinquent rather than in deferment or frozen. Congress merely requires the furnisher of the CARES Act accommodation to "maintain the delinquent status during the period in which the accommodation is in effect" provided that the "credit obligation or account was delinquent before the accommodation." 15 U.S.C. § 1681s-2(a)(1)(F)(ii)(II). CMS may continue to report Plaintiff's loan as delinquent during the forbearance period because, as Plaintiff alleges, she entered her deferment period without first paying the full balance of her mortgage obligations. *See* Dkt. 9 at 15 ¶ 7 (confirming Plaintiff's receipt of a notice of intent to foreclose); *id.* at 16 ¶ 19 (confirming Plaintiff did not pay her mortgage in June of 2019 due to other financial obligations).

Accordingly, this Court has no subject matter jurisdiction over Plaintiff's CARES Act claim. Even if jurisdiction were proper, Plaintiff's claim fails to state a claim, requiring dismissal.

### iv. FDCPA Claim

Plaintiff relies on the same statutes in her FDCPA claim against CMS as she does for her FDCPA claim against BofA. For the same reasons outlined *supra* by this Court in Plaintiff's FDCPA claim against BofA, this Court finds that Plaintiff cannot advance her FDCPA claim against CMS. CMS is not a "debt collector" as defined by the statute, subjecting Plaintiff's FDCPA claim to dismissal.

### v. Federal and State Fraud Claims

For the same reasons Plaintiff did not adequately plead a fraud claim against all other Defendants, Plaintiff has also failed to plead a facially plausible fraud claim against CMS. Put simply, she has not alleged "the who, what, when, where, and how of the alleged fraud." *Murphy*, 589 F. App'x at 652. Additionally, each of the statutes cited by Plaintiff—18 U.S.C. §§ 1001-02, 1341 and Virginia Code § 18.2-213.2—are bare criminal statutes upon which courts are traditionally unwilling to interpret a private right of action. *See, e.g.*, *Broderick*, 225 F.3d at 447 ("The Supreme Court historically has been loath to infer a private right of action from a bare criminal statute."); *Reeves*, 816 F.2d at 137 (rejecting private right of action for 18 U.S.C. § 1001); *Bardes v. Mass. Mut. Life Ins. Co.*, 2011 WL 1790816, at *4 (M.D.N.C. May 10, 2011) (deeming civil federal fraud-related claims under bare criminal statutes, including 18 U.S.C. § 1002 without merit and frivolous); *Hilgeford*, 2009 WL 302161, at *4 (rejecting private right of action for 18 U.S.C. § 1341); *Devnew v. Brown & Brown, Inc.*, 396 F. Supp. 2d 665, 675 (E.D. Va. 2005) (describing Title 18 of the Virginia Code as containing criminal statutes).

Accordingly, Plaintiff's fraud claims against CMS fail to state a claim upon which relief can be granted, meriting dismissal.

C. Defendant Erie's Relief from Misjoinder and Motion to Dismiss

Erie first argues that it has been improperly joined in this case.  To start, Erie contends that Plaintiff's claim against Erie arises out of an insurance claim that, on its own, raises no justiciable federal question with a private right of action.  Neither does Plaintiff allege diversity jurisdiction for these matters which Erie maintains arise under state law.  That leaves supplemental jurisdiction as the sole remaining avenue for asserting jurisdiction before this Court.  However, Erie submits that the factual allegations undergirding Plaintiff's claim against Erie do not arise from the same transaction or occurrence as the other claims made against its co-defendants.  Therefore, Erie argues that it should be severed from this matter under Federal Rule of Civil Procedure 21.

Plaintiff alleges "[f]ederal [q]uestion" jurisdiction in raising its claims against Erie.  Dkt. 9 at 5.  In her statement of jurisdiction, she alleges that her claims arise under 18 U.S.C. § 1341, 15 U.S.C. § 93, Virginia Code § 38.2-508, Virginia Code §§ 38.2-510(4)-(5), and under laws governing breach of contract.  *Id.* at 6.

28 U.S.C. § 1331 provides federal courts with jurisdiction to hear "all civil actions arising under the Constitution, laws, or treaties of the United States."  Such cases involving federal questions arise when "federal law creates the cause of action."  *Vlaming v. W. Point Sch. Bd.*, 480 F. Supp. 3d 711, 717 (E.D. Va. 2020).  "The 'mere presence of a federal issue in a state cause of action' is not enough to confer jurisdiction."  *Burrell v. Bayer Corp.*, 918 F.3d 372, 380 (4th Cir. 2019) (quoting *Merrell Dow Pharma. Inc. v. Thompson*, 478 U.S. 804, 813 (1986)).  When "state law creates the cause of action, federal question jurisdiction will lie only if 'it appears from the [complaint] that the right to relief depends upon the construction or application of [federal law].'" *Grable & Sons Metal Prods. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 313 (2005).  A right to relief depends upon the construction or application of federal law if "a federal issue is (1) necessarily

raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn v. Minton*, 568 U.S. 251, 258 (2013). "For a claim to 'necessarily raise[]' a federal issue, 'a right or immunity created by the Constitution or laws of the United States must be an element, and an essential one, of the plaintiff's cause of action.'" *Simpkins v. SunTrust Mortg., Inc.*, No. 2:12-cv-264, 2013 WL 1966904, at *4 (E.D. Va. May 7, 2013) (quoting *Franchise Tax Bd. v. Constr. Laborers Vacation Tr.*, 463 U.S. 1, 10-11 (1983)). The federal cause of action is substantial "only if [] the federal statute cited in the complaint provides for a private right of action." *Healthtek Sols., Inc. v. Fortis Ben. Ins. Co.*, 274 F. Supp. 2d 767, 774 (E.D. Va. 2003); *see also Paine v. Wells Fargo Bank*, No. 2:11-cv-89, 2011 WL 3236390, at *4 (E.D. Va. July 12, 2011) (finding the plaintiffs' "right to relief for the state-law claims does not necessarily depend on resolution of a substantial question of federal law [] where federal law does not create a private right of action").

In the event there is no independent jurisdictional basis for a federal court to hear a claim against a defendant, Congress authorized courts to exercise, in certain cases, supplemental or pendent jurisdiction over that party. "[D]istrict courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). "Federal courts may have supplemental jurisdiction over a state cause of action if both the state and [surviving] federal claims arise from the same transaction or occurrence." *Hardin v. Belmont Textile Mach. Co.*, 355 F. App'x 717, 723 (4th Cir. 2009). A "district court may decline to exercise supplemental jurisdiction over a claim if the court has dismissed all claims over which it had original jurisdiction." *Hunt v. Branch Banking & Tr. Co.*, 480 F. App'x 730, 732 (4th Cir. 2012) (citing 28 U.S.C. § 1367(c)(3)); *see also United Mine Workers of Am. v. Gibbs*,

383 U.S. 715, 726 (1966) (holding that "if the federal claims are dismissed . . ., the state claims

should be dismissed as well"); *Walsh v. Mitchell*, 427 F. App'x 282, 283 (4th Cir. 2011) (same);

*Ketema v. Midwest Stamping, Inc.*, 180 F. App'x 427, 428 (4th Cir. 2006) (same).

In liberally construing Plaintiff's *pro se* claims against Erie, Plaintiff alleges two federal

statutes undergird her claims: 18 U.S.C. § 1341 and 15 U.S.C. § 93.  But Plaintiff also alleges

multiple claims arising under state law related to Plaintiff's allegation that Erie breached its

insurance contract with Plaintiff.  The nature of her claims against Erie do not indicate a

"depend[ence] upon the construction or application of" either federal law.  *Grable & Sons*, 545

U.S. at 313.  Further, 18 U.S.C. § 1341 is a criminal statute pertaining to mail fraud for which

"[t]here is no private right of action."  *Neild v. Wolpoff & Abramson, L.L.P.*, 453 F. Supp. 2d 918,

926 (E.D. Va. 2006).  As a result, this federal statute cannot be said to constitute a substantial part

of Plaintiff's claim against Erie.  *See Healthtek*, 274 F. Supp. 2d at 774.  As to 15 U.S.C. § 93,

Plaintiff's complaint is devoid of any allegations which call into question matters enumerated in

the cited federal statute.  *See Weller v. Dep't of Soc. Servs. for City of Baltimore*, 901 F.2d 387,

391 (4th Cir. 1990) ("Only those questions which are squarely presented to a court may properly

be addressed.").

Simply overlaying a complaint with citations to federal laws as a means of securing

jurisdiction before the Court falls woefully short of the general pleading requirements under

Federal Rule of Civil Procedure 8 and abuses the jurisdictional entitlement afforded to litigants

under 28 U.S.C. § 1331, particularly when such allegations are married with state law claims.  *See,*

*e.g.*, *Myers v. Hobson*, No. 2:20-cv-1852, 2021 WL 3410545, at *6 (D.S.C. July 9, 2021) (rejecting

federal question jurisdiction because plaintiffs "offer[ed] no intelligible, substantive factual

allegations that connect [d]efendants' conduct to federal law" despite having been warned that

"invoking federal question jurisdiction requires more than pleading unsupported, naked references to federal statutes"); *Adams v. Royal Park Nursing & Rehab.*, No. 3:20-cv-634, 2021 WL 4462914, at *3 (W.D.N.C. Sept. 29, 2021) (requiring "even a pro se plaintiff's claim for relief" to go beyond "labels and conclusions" and instead "allege facts sufficient to state all the elements of [a] claim"); *Hagedorn v. Union Carbide Corp.*, 363 F. Supp. 1061, 1066 (N.D. W. Va. 1973) ("The rule governing the pleading of jurisdiction in federal court requires more than simply alleging that jurisdiction exists, or citing a federal statute.").

Plaintiff's Amended Complaint alleges no alternative grounds for diversity jurisdiction, including no mention of an amount in controversy and no evidence that Plaintiff and Erie are diverse parties.[8]  With no independent jurisdictional grounds to consider Plaintiff's claims against Erie and having dismissed all other claims brought by Plaintiff against Erie's co-defendants, this Court exercises its wide latitude to dismiss Plaintiff's remaining claims against Erie anchored by state law.  28 U.S.C. § 1367(c)(3).  Thus, this Court will not sever Erie from this matter and instead will dismiss Erie altogether.

### D.  Defendant Law Office of Gerald Shapiro

Summons was issued as to the Law Office of Gerald Shapiro ("Law Office") on December 29, 2021 and returned unexecuted on January 11, 2022 upon refusal of service because "Gerald Shapiro does not work at the Manassas location."  Dkt. 17 at 2; Dkt. 59 at 1.  Despite Plaintiff not requesting assistance of the Court to reattempt service upon the Law Office and the 90-day period

---

[8]  Indeed, Plaintiff could not make such a case given the Court, among others, has held that Erie "as a reciprocal insurance exchange, is a citizen of each state in which its members reside." *Erie Ins. Exch. v. One World Techs., Inc.*, No. 1:16-cv-915, 2016 WL 9176323, at *1 (E.D. Va. Oct. 3, 2016); *see also Erie Ins. Co. v. Toyota Motor Sales, U.S.A., Inc.*, No. 1:20-cv-184, 2020 WL 7264807, at *2 (W.D.N.C. Dec. 10, 2020) ("District courts in this Circuit have held that, as an unincorporated association, the citizenship of a reciprocal insurance exchange is based on the citizenship of its members for diversity purposes, and that those members include policyholders.").

to serve the Law Office has expired, *see, e.g.*, *Moore v. Wells Fargo Bank*, No. 2:17-cv-4828, 2018 WL 2264207, at *1 (C.D. Cal. May 17, 2018), the Court afforded Plaintiff an additional thirty days to serve the Law Office again. *See* Dkt. 81; Fed. R. of Civ. P. 4(m). Still, Plaintiff did not serve the Law Office. Therefore, the Law Office is dismissed without prejudice as Plaintiff has failed to exercise her right to serve the Law Office pursuant to this Court's invitation. To afford any additional time to Plaintiff would interfere with judicial efficiency and the interests of justice. *Greene v. City of Va. Beach*, No. 2:20-cv-253, 2022 WL 264457, at *3 (E.D. Va. Jan. 27, 2022) ("It is well-settled that a 'district court possesses inherent powers that are governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'") (quoting *Dietz v. Bouldin*, 579 U.S. 40, 45 (2016)).

   E.  Plaintiff's Motion Objecting to Adopting Magistrate's Report and Recommendation

   Given that this Court has dismissed each of Plaintiffs' claims against each defendant for lack of jurisdiction, Plaintiff's objection to this Court's adoption of the Magistrate Judge's Recommendation is rendered moot.

## IV.  CONCLUSION

   For the reasons articulated in this opinion, it is hereby ORDERED that Private Defendant's Motion to Dismiss (Dkt. 25) is GRANTED; and it is

   FURTHER ORDERED that Erie's Motions to Dismiss (Dkt. Nos. 33; 38) are GRANTED; and it is

   FURTHER ORDERED that Federal Defendants' Motion to Dismiss (Dkt. 60) is GRANTED; and it is

FURTHER ORDERED that Erie's Motion for Relief from Misjoinder (Dkt. Nos. 33, 40) is DENIED as MOOT; and it is

FURTHER ORDERED that Plaintiff's Motion Objecting to this Court's Order Adopting the Magistrate Judge's Report and Recommendation (Dkt. 42) is DENIED as MOOT; and it is

FURTHER ORDERED that Plaintiff's Amended Complaint (Dkt. 9) is DISMISSED.

The Clerk is directed to forward copies of this Order to counsel of record and to Plaintiff's most recent mailing address on file and to close this civil action.

To appeal this decision, Plaintiff must file a written notice of appeal with the Clerk of Court within 30 days of the date of entry of this Memorandum Opinion and Order.  A notice of appeal is a short statement indicating a desire to appeal, including the date of the order Plaintiff wants to appeal.  Plaintiff need not explain the grounds for appeal until so directed by the court of appeals. Failure to file a timely notice of appeal waives Plaintiff's right to appeal this decision.

It is SO ORDERED.

Alexandria, Virginia
July 7, 2022

/s/

Rossie D. Alston, Jr.
United States District Judge